**UNITED STATES, Appellee,**

v.

**Private E1 Leon N. BROWN, United States Army, Appellant.**

**ARMY 9600270.**

U.S. Army Court of Criminal Appeals.

March 27, 1998.

---

4. A warrant officer who is not commissioned is eligible for a dishonorable discharge, not a dis- missal. R.C.M. 1003(b)(9)(A) and (B).

For Appellant: Major Michael E. Hatch, JA; Captain Paul Fiorino, JA (on brief).

For Appellee: Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Captain Robert F. Resnick, JA (on brief).

Before TOOMEY, Senior Judge, TRANT and CARTER, Appellate Military Judges.

## OPINION OF THE COURT

TOOMEY, Senior Judge:

In accordance with his pleas, appellant was convicted of absence without leave, adultery, and indecent acts with another in violation of Articles 86 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 934 (1988) [hereinafter UCMJ]. Contrary to his pleas, a military judge sitting as a general court-martial found the appellant guilty of rape in violation of Article 120, UCMJ, 10 U.S.C.A. § 920. The military judge found the appellant not guilty of forcible sodomy in violation of Article 125, UCMJ, 10 U.S.C.A. § 925. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for thirteen months, and forfeiture of all pay and allowances.

This case is before the court for review under Article 66, UCMJ, 10 U.S.C.A. § 866. We have considered the record of trial, appellant's two assignments of error, matters raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and the government's reply thereto. Appellant contends that the evidence was legally and factually insufficient to prove the crime of rape and that the military judge erred by admitting, over the trial defense counsel's objection, a Criminal Investigation Command (CID) special agent's testimony under Military Rule of Evidence 803(1) [hereinafter Mil.R.Evid.], as a present sense impression exception to the hearsay rule. While we find appellant's second assignment of error to be meritorious, we find any error to be harmless in the total context of the case. We affirm the findings and sentence.

## LEGAL AND FACTUAL SUFFICIENCY OF THE RAPE GUILTY FINDING

### LAW

■ The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the government, a court could rationally find the existence of every element beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Blocker,* 32 M.J. 281, 284 (C.M.A.1991). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is convinced of appel-

lant's guilt beyond a reasonable doubt. UCMJ art. 66(c); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). Where the evidence raises defenses, the government must also prove beyond a reasonable doubt that the defense so raised does not apply. *United States v. Berri,* 33 M.J. 337 (C.M.A.1991); Rules for Courts–Martial 916(b) and (j) [hereinafter R.C.M.].

## FACTS

Appellant and two other soldiers met the victim at a servicemembers' club. Her servicemember husband had for all intents and purposes abandoned the five-month pregnant victim earlier in the evening. At closing time the victim accompanied the three soldiers back to the barracks where a party was purportedly taking place. No party was taking place in the barracks. In the barracks appellant and his friends continued drinking beer and gave the victim some snack cakes to eat. The victim testified that she was subsequently held down, forcibly undressed, and raped by the three soldiers. Appellant and the two co-defendants each had sexual intercourse with the victim at least once during the course of conduct. The victim made a complaint and supporting sworn statement, and testified numerous times during the co-defendants' separate Article 32, UCMJ, investigations (appellant waived his Article 32 investigation), and three separate trials. Appellant's trial was the last trial in the series. During the course of appellant's trial, the victim was successfully challenged numerous times concerning variations in her present and past testimonies and was likewise impeached concerning whether she had been to the barracks previously with one of the co-defendants, whether she yelled during the rape, and how much noise was being made in the room during the rape.

## DISCUSSION

■ Having reviewed the evidence of record, the military judge's extensive special findings, and recognizing the military judge's unique opportunity to see and hear the witnesses, including both the victim and appellant, to weigh the evidence and to judge credibility in making his findings, we find that the evidence is legally and factually sufficient to sustain the rape conviction. UCMJ art. 120; *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Turner,* 25 M.J. at 325.

Despite the numerous inconsistencies and incongruities in the victim's testimony, the totality of the evidence supports the military judge's findings that the victim did not consent to having sexual intercourse with the appellant, that the sexual intercourse was forcibly obtained, and that appellant could not have reasonably believed that the victim consented. We summarize and adopt the military judge's special findings as follows:

- The victim did not consent to sexual intercourse with any of the three men, including appellant. The victim made her lack of consent manifest by her demeanor, conduct, and words (and lack of words) during the sex acts.

- The victim made her lack of consent reasonably manifest at the beginning of the sex acts: She physically resisted having her clothing removed. Appellant knew that she resisted having her clothing removed. Thereafter, more physical resistance by the victim would have been futile considering the totality of the circumstances, including the fact that she was pregnant and that three men were having sex with her.

- The sexual intercourse was accomplished by force. The initial act of sexual intercourse by appellant's accomplices was accomplished by actual physical force. Appellant's act of sexual intercourse was accomplished by constructive force because of his use of intimidation against the victim. The threat of physical injury to the victim and her unborn child made further resistance futile.

- Appellant did not have a mistake of fact defense because he did not have an honest and reasonable belief that the victim consented to sexual intercourse with him.

It is plain from the military judge's special findings that appellant was found guilty of rape for his own act of forcible, nonconsensual sexual intercourse with the victim. Thus, appellant was found guilty as a perpetrator

rather than as a principal to the acts of the other two soldiers. UCMJ art. 77, 10 U.S.C.A. § 877.

We have considered our brother judge's dissent and respectfully disagree. In reaching our decision we, like the trial judge, are fully aware of the inconsistencies in the victim's testimony and challenges to the victim's veracity. We do not judge the victim as harshly, nor appellant as benignly, as does our brother. Rape is sexual intercourse by force and without consent. UCMJ art. 120. Appellant engaged in sexual relations with the victim as the third man in an unwelcomed sexual assault. Appellant's own testimony and pretrial statements admit that the victim did not undress herself and never consented to sexual relations with him. Indeed, she never said anything at all, but appeared anguished, distraught, and "sad and desperate" as he took his "turn" at his friends' urging. As found by the judge, force was both manifest and implicit in the situation.

The victim's and appellant's statements are essentially consistent concerning the operant facts of appellant's intercourse with the victim. We are satisfied with the victim's truthfulness concerning the core elements of the rape offense despite other obvious challenges to her veracity. After a full review of the record and the military judge's special findings, we find the victim credible on the issues of force and consent *at the moment of sexual intercourse with appellant* and agree with the military judge's findings. In making our findings we are particularly aware that both the victim and appellant testified in this case and that the military judge was in the unique position of being able to see and hear the evidence and witnesses in judging credibility and making findings. UCMJ art. 66(c).

### ADMISSION OF EVIDENCE PURSUANT TO Mil.R.Evid. 803(1)

The military judge admitted CID Special Agent (SA) Lafayette's testimony concerning a conversation with another special agent, SA Hilton, under the Mil.R.Evid. 803(1), "present sense impression" hearsay exception, which states:

### Rule 803. Hearsay exceptions; availability of declarant immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(1) *Present sense impression.* A statement describing or explaining an <u>event or condition</u> made while declarant was perceiving the event or condition or <u>immediately thereafter</u>. (second and third emphasis added).

### FACTS

Appellant was interviewed multiple times by multiple CID investigators. An initial interview occurred on 2 August 1995. The contested evidence involved follow-up interviews on 29 August 1995.

Special Agent Hilton conducted the first interview on 29 August. Special Agent Hilton testified for the government on the merits addressing only the execution of the appellant's Article 31 rights waiver. Special Agent Hilton testified for the defense on the merits that appellant said "no" when asked if he held down the victim's feet during the sexual acts. Special Agent Hilton did not recall appellant ever answering "yes" to that question. On cross-examination, SA Hilton testified it was possible that appellant could have answered "yes" and that he just didn't recall the response. Investigator Muerer, who observed portions of SA Hilton's interview of appellant through a two-way mirror, testified on the merits for the government that appellant repeatedly denied holding the victim's feet, but at one point told SA Hilton that he did so. The victim testified that she was held by the shoulders and feet during various parts of the sexual assaults. Appellant testified and denied holding the victim's feet while his co-accused engaged in sexual intercourse with the victim.

The challenged testimony was SA Lafayette's rebuttal testimony offered by the government. Special Agent Lafayette's testimony was presented to corroborate Investigator Muerer's testimony. Special Agent Lafayette assumed the interview from SA Hilton and obtained the appellant's written statement. Special Agent Lafayette testified that before he assumed the interview, SA Hilton told him that appellant told SA Hilton that

he held the victim's feet while his co-accused engaged in sexual intercourse. During SA Lafayette's interview the appellant did not confirm holding the victim's feet. The government submitted SA Hilton's oral statement to SA Lafayette under Mil.R.Evid. 803(1), as a present sense impression exception to the hearsay rule.

The defense objected to the court considering SA Lafayette's testimony recounting SA Hilton's statement because it was hearsay. Special Agent Hilton did not testify in relation to the defense objection concerning his alleged statement or SA Lafayette's assumption of the interview. Special Agent Lafayette testified only that the conversation took place before he assumed appellant's interview from SA Hilton. No testimony addressed how long SA Hilton's initial interview lasted, when or how quickly the hand-off to SA Lafayette occurred following SA Hilton's initial interview, or what time the conversation took place. The rights warning statement and appellant's written statement executed on 29 August were introduced as prosecution exhibits. Both documents include time references. The rights warnings statement indicates a time of 0814. Appellant's written statement indicates two times: "~~1230~~" (alteration in original) and "1602."

The trial defense counsel objected to the court considering the evidence as a hearsay exception under Mil.R.Evid. 803(1) because the direct testimony and other evidence did not establish that the statement was made *immediately* after the appellant's initial interview. The military judge disagreed and admitted the evidence.

Although alerted to the trial defense counsel's concerns and having the opportunity to establish the conversation as immediately following the initial interview, the trial counsel failed to take the opportunity to perfect the hearsay exception. The trial defense counsel chose not to perfect the government's case and did not inquire further as to the chronology of SA Hilton's initial interview and SA Hilton's subsequent conversation with SA Lafayette.

## LAW

### Standard of Review

■ The military judge's decision to admit or exclude hearsay evidence is reviewed for an abuse of discretion. *United States v. Hyder,* 47 M.J. 46, 48 (1997).

### Military Rule of Evidence 803(1)

Military Rule of Evidence 803(1) permits the admission of a hearsay statement describing or explaining an event or condition made while the declarant was perceiving the *event* or condition or made *immediately* after perceiving the event. "Rule 803(1) is taken from the Federal Rule verbatim.... It is somewhat similar to a spontaneous exclamation, but does not require a startling event." Manual for Courts–Martial, United States, (1995 edition), app. 22, Mil.R.Evid. 803 analysis, at A22–51.

The authors of the MILITARY RULES OF EVIDENCE MANUAL note the following underlying theory of the exception:

> [T]he Rule ... seeks to avoid calculated or planned statements when possible, because these are not as likely to be as sincere as spontaneous statements. Thus, Rule 803(1) applies only to statements made at the time of the *event* or immediately thereafter. *The term "immediately thereafter" is not defined in the Rule or its drafters' Analysis.* However, the contemporaneousness of the statement is crucial to its admission, and should be the proponent's main foundational concern. Courts will generally evaluate admissibility on a case-by-case basis, focusing on whether the declarant had an opportunity to reflect on his thoughts and thereby modify them. We believe that a statement must be made as soon as the opportunity to speak arises. The burden is on the person who claims the benefit of this or another exception to show entitlement to it.

STEPHEN A. SALTZBURG ET AL., MILITARY RULES OF EVIDENCE MANUAL 942 (4th ed.1997) [hereinafter cited as SALTZBURG] (emphasis added). *See Wolfson v. Mutual Life Ins. Co. of New York,* 455 F.Supp. 82 (M.D.Pa.), *aff'd,* 588 F.2d 825 (3d Cir.1978) (one hour is too long a gap). *But see United*

*States v. Blakey,* 607 F.2d 779 (7th Cir.1979) (23 minutes is acceptable).

Military Rule of Evidence 803(1) has been rarely litigated in military law. Such evidence appears to be more frequently admitted under other Mil.R.Evid. 803 exceptions. As predicted by the Drafter's Analysis, when courts discuss Mil.R.Evid. 803(1) evidence, the discussion is generally tied to Mil.R.Evid. 803(2), excited utterance, precedents.

### DISCUSSION

The instant case raises two questions. First: Is a conversation or an interrogation an "event or condition" for the purposes of Mil.R.Evid. 803(1)? Second: If a conversation or an interrogation is an event or condition for the purposes of Mil.R.Evid. 803(1), did SA Hilton's conversation with SA Lafayette occur *"while* [SA Hilton] was perceiving the event or *immediately thereafter"* as required by the rule.

#### Is a Conversation or an Interrogation an Event for the Purposes of Mil.R.Evid. 803(1)?

■ Numerous cases have held that conversations are events for the purposes of the present sense impression exception to the hearsay rule. *See Phoenix Mutual Life Ins. Co. v. Adams,* 30 F.3d 554, 567 (4th Cir. 1994); *United States v. Portsmouth Paving Corp.,* 694 F.2d 312, 322–323 (4th Cir.1982). Use of the exception to admit even hearsay within hearsay is routine. *Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.,* 71 F.3d 545, 555 (6th Cir.1995); *Portsmouth Paving Corp.,* 694 F.2d at 322–323. In *United States v. Gil,* 58 F.3d 1414, 1422 (9th Cir.1995), the court found the notes of officers transcribing the statements of other officers conducting a surveillance to be admissible as present sense impressions under Rule 803(1).

We find that SA Hilton's conversation/interrogation with the appellant and subsequent recounting of it to SA Lafayette is an *event* for the purposes of Mil.R.Evid. 803(1). The interrogation of a suspect and the subsequent handoff of that interrogation from one investigator to another investigator is an event even more noteworthy than a normal conversation. The circumstances provide particular indicia of reliability. Special Agent Hilton knew that his primary role was to merely advise the appellant of his Article 31, UCMJ, rights and obtain appellant's rights waiver. Special Agent Hilton knew that SA Lafayette would conduct any actual interrogation. Accordingly it was incumbent upon SA Hilton to accurately note any comments that the appellant made during the rights warning session and to accurately convey that information to SA Lafayette for consideration and inclusion during the actual interrogation and in any subsequent statement. Likewise, it was incumbent upon SA Lafayette to accurately note the ground already covered by SA Hilton, appellant's preliminary admissions, and to obtain a full and accurate statement from the appellant. Similar situations occur frequently in military life, e.g., duty officers brief their replacements concerning the present status of the command, on-going actions, and what has occurred during the preceding period; and mechanics advise the next maintenance echelon what repairs have been effected as the vehicle passes down the line for additional work.

Accordingly, we answer the question of whether SA Hilton's conversation/ interrogation with the appellant was an event for the purposes of Mil.R.Evid. 803(1), affirmatively.

#### Did The Conversation Occur Immediately After The Event or As Soon As Possible Thereafter?

■ No military appellate court has defined "immediately thereafter" beyond SALTZBURG's suggested definition, *i.e.,* "as soon as the opportunity to speak arises." In the sole reported case directly applying the rule, the statement was made "contemporaneously, if not instantaneously, with the event being perceived." *United States v. Evans,* 23 M.J. 665 (A.C.M.R.1986). In cases referencing possible Mil.R.Evid. 803(1) consideration, but actually applying other Mil. R.Evid. 803 exceptions, periods of twelve hours up to two-and-a-half weeks have been rejected as untimely. *Cf. United States v. Miller,* 46 M.J. 80, 83 (1997) (fifteen hours); *United States v. Jones,* 30 M.J. 127, 129 (C.M.A.1990) (twelve hours); *United States v. LeMere,* 22 M.J. 61, 67 (C.M.A.1986)

(twelve hours); *United States v. Sandoval*, 18 M.J. 55, 62 (C.M.A.1984) (two-and-a-half weeks); *United States v. Ferguson*, 15 M.J. 12, 22 (C.M.A.1983) (five days).

Considering the testimony and documentary evidence, SA Hilton's statement to SA Lafayette may have occurred instantaneously or as much as four to eight hours after the perceived event. The trial defense counsel correctly objected to the absence of evidence of timeliness. The actual chronology of SA Hilton's interview with the appellant and subsequent conversation with SA Lafayette was never established. Accordingly, no evidence was presented that SA Hilton's conversation with SA Lafayette was, in fact or in any sense, *immediately* after the interview as required by Mil.R.Evid. 803(1). Likewise, no evidence was presented upon which to make a determination that SA Hilton's statement to SA Lafayette was made "as soon as the opportunity to speak [arose]." SALTZ-BURG at 942.

█ Because the "immediate" character of the evidence was not established the military judge clearly abused his discretion by admitting the hearsay evidence over the appellant's objection. Accordingly, we find that the military judge erred by admitting SA Lafayette's testimony recounting SA Hilton's purported statement as permissible hearsay under the Mil.R.Evid. 803(1), present sense impression exception. However, under the total evidentiary circumstances of this case as discussed above, we conclude that the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Kindle*, 45 M.J. 284, 286 (1996). Moreover, the contested testimony was cumulative with the victim's and Investigator Muerer's previously admitted testimony. Accordingly, the contested testimony did not materially prejudice the substantial rights of the appellant in this case. UCMJ art. 59(a); *United States v. Flack*, 47 M.J. 415, 417 (1998).

On consideration of the entire record, including consideration of those issues personally asserted by the appellant, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, those findings of guilty and the sentence are affirmed.

Judge CARTER concurs.

TRANT, Judge, concurring in part and dissenting in the result:

I agree with the majority opinion's finding that it was error for the military judge to admit as "present sense impression" (Mil.R.Evid. 803(1)), SA Lafayette's testimony concerning SA Hilton's statements to SA Lafayette recounting the appellant's statements to SA Hilton.

Having weighed the evidence presented at trial, excluding the above-mentioned erroneously admitted hearsay, and making allowances for not having personally observed the witnesses,[1] I am not convinced of appellant's guilt of rape beyond a reasonable doubt. I recognize that the trial judge had a singular advantage over this court in being able to discern the demeanor of the witnesses. Although I do not minimize the significance that demeanor may have in assessing truthfulness, credibility is not solely a function of demeanor. Other evidence, such as corroboration or the lack thereof, may be more persuasive in determining the believability of the testimony.

The prosecutrix exaggerated some aspects of her testimony, embellished other parts, and fabricated some details in an effort to put herself in a better light. Her attempt to minimize her prior contact with appellant and his co-accused, and thus bolster her version of the incident, seriously diminished her credibility. Her rendition of events leading up to the alleged rape is implausible, rebutted by defense evidence, and contradicted by her own prior statement. Her assertion of resistance manifested by prolonged screaming was successfully debunked by defense evidence, including her husband's testimony that she told him that she didn't scream at all. Overall, her account of what occurred stretches the limits of plausibility beyond the breaking point.

1. *Turner,* 25 M.J. at 325.

While corroboration is not required, and a victim should not be penalized for being unfortunate enough not to have any available, when a victim's testimony is contradictory and improbable, corroboration would certainly facilitate the prosecution in meeting its evidentiary burden. The government's case lacked sufficient corroboration to compensate for a prevaricating prosecutrix. Appellant's testimony describing the demeanor of the victim, which the majority considers to be an admission of lack of consent being manifest, I conclude only evinces acquiesence. The lack of physical evidence, fresh complaint, or corroborating witnesses further weakened the government's case.

I am unconvinced that the government has proven beyond a reasonable doubt that the intercourse was by force or that the victim made her lack of consent reasonably manifest by taking such measures of resistance as were called for by the circumstances.

Accordingly, I would set aside the finding of guilty as to Charge I and its specification and order them dismissed, affirm the remaining findings of guilty, set aside the sentence and authorize a rehearing as to the sentence.