UNITED STATES, Appellee,

v.

Specialist Anson D. BENTON, United States Army, Appellant.

ARMY 9800862.

U.S. Army Court of Criminal Appeals.

22 Jan. 2001.

For Appellant: Captain Steven P. Haight,
JA (argued); Colonel Adele H. Odegard, JA;
Major Scott R. Morris, JA; Major Jonathan

F. Potter, JA (on brief); Captain David S. Hurt, JA.

For Appellee: Captain Karen J. Borgerding, JA (argued); Lieutenant Colonel Eugene R. Milhizer, JA; Major Patricia A. Ham, JA; Captain Arthur L. Rabin, JA (on brief); Major Anthony P. Nicastro, JA.

Before CAIRNS, Senior Judge, BROWN, and VOWELL, Appellate Military Judges.

## OPINION OF THE COURT

VOWELL, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of forcible sodomy and kidnapping of CM, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 [hereinafter UCMJ]. The appellant was acquitted of numerous other offenses involving CM and two other alleged victims. The convening authority approved the adjudged sentence of confinement for two years and six months, forfeiture of all pay and allowances, a bad-conduct discharge, and reduction to Private E1.

In three assignments of error in this Article 66, UCMJ, 10 U.S.C. § 866, appeal, the appellant challenges two evidentiary rulings of the military judge pertinent to his duress defense and contends that his conviction of forcible sodomy is legally and factually insufficient. We agree that the military judge abused his discretion in refusing to permit a witness to testify to certain exculpatory statements made by the appellant, but finding no prejudice, we decline to grant relief. We find the second challenged evidentiary ruling to be legally correct. Both of the evidentiary issues warrant discussion. We find the legal and factual sufficiency argument to be without merit, and will not discuss it further.

1. The appellant was acquitted of nearly all the offenses where criminal responsibility was predicated on his vicarious liability for PFC Ransom's actions, including the rape of CM. The appellant

## FACTS

On the evening of 17 October 1997, the appellant and his alleged accomplice, Private First Class (PFC) Taori Ransom, spent several hours driving around in the vicinity of Lakewood, Washington, an area near Fort Lewis. The appellant, who was driving PFC Ransom's car, stopped the car at PFC Ransom's direction near two young women, CM and her cousin, PFC Ruiz. Much of CM's chilling account of her kidnapping, rape, and forcible sodomy by PFC Ransom that evening was unchallenged at trial, although the appellant vigorously contested his criminal liability for what transpired.[1] Some of the evidence surrounding the offenses of which the appellant was acquitted places the challenged evidentiary rulings in context and is thus included in our discussion of the facts.

### A. The Government's Case

CM and PFC Ruiz both testified that they were talking outside the home of PFC Ruiz' boyfriend when they heard a car pull up. They saw a man leave the car and walk toward them, brandishing a 9 mm semi-automatic pistol. He grabbed CM's hair and dragged her, screaming and struggling, into his car. When PFC Ruiz attempted to aid her cousin, the man struck PFC Ruiz across the forehead with the pistol. The appellant then drove off with the man in the back seat with CM.

According to CM, once she was in the car, the man, later identified as PFC Ransom, pointed his gun at her and told her to undress and then ordered her to perform oral sodomy upon him. CM did so. He thereafter climbed on top of her and raped her. While PFC Ransom was sexually assaulting her, she saw the appellant look back and grin or smile at her. When the car stopped at a dead end in a wooded area, the appellant announced that it was "his turn."

CM testified that PFC Ransom pulled her by her hair through a barbed wire fence and led her into the woods, and the appellant followed them. She did not see the gun after they left the car, but was fearful that PFC

was convicted of CM's kidnapping, for which the government contended he was liable as an actual perpetrator, as a principal, or as a co-conspirator.

Ransom was still armed. Private First Class Ransom ordered her to get on her knees to perform oral sodomy on the appellant, who had already removed his erect penis from his pants. She complied, placing her mouth on his penis. The appellant thereafter left the area to move the car and did not return.

Meanwhile, local police were looking for the appellant, PFC Ransom, and CM. Based on descriptions provided by PFC Ruiz and additional assistance from her boyfriend, the police stopped the appellant while he was driving PFC Ransom's car along an interstate highway several miles from the scene of the abduction. The appellant was the only occupant, and, just before he emerged from the car, the arresting officers observed him reach down under the front of the driver's seat. A later search of the vehicle disclosed a 9 mm semi-automatic pistol under the driver's seat and clothes (jeans, sweater, and underwear) belonging to CM in the back and front seats.

When questioned by one of the arresting officers, the appellant first claimed that he had borrowed the car from a friend and was taking some other friends to a club in Seattle. He then stated that he had dropped the friends off at Fort Lewis and was going on to the club by himself, but could not explain why. He made no mention of CM's abduction.

In a taped statement made to police detectives in the early morning hours of 18 October, the appellant admitted that he and PFC Ransom had been driving around in the early evening of 17 October. In the statement, the appellant asserted that as they neared the appellant's house, PFC Ransom told him to stop. He did not know what PFC Ransom was doing until he heard "the scream and holler." He saw CM forced into the car, and then PFC Ransom told him to drive. He said that he did as he was told, stopping the car in a wooded area and entering the woods with PFC Ransom and CM. He indicated

that PFC Ransom told CM to "give me [the appellant] some" but denied that CM actually performed oral sex on him. He stated that CM grabbed his genitals through his clothing. The appellant then returned to the car because he was scared. The tape of this interrogation was played for the court members, and a transcript was introduced as a prosecution exhibit.

**B. The Testimony of Private New**

The challenged evidentiary rulings stemmed from the testimony of Private (PV2) New, a pretrial confinee at the regional confinement facility where the appellant and PFC Ransom were also being held in pretrial confinement. Testifying under a grant of leniency,[2] PV2 New recounted certain statements that the appellant made while they were cellmates.

Private New's testimony on direct examination tracked fairly closely with the appellant's taped statement to the local police. According to PV2 New, the appellant said that he and PFC Ransom had been driving around for some time when PFC Ransom told the appellant to stop near two women, and that the appellant had no idea that PFC Ransom was going to abduct one of them until PFC Ransom dragged CM into the car.

Private New recounted the appellant's observations of PFC Ransom sodomizing and raping CM in the back seat of the car while the appellant drove around. He testified that the appellant described stopping the car in a wooded area, and that PFC Ransom directed CM to perform oral sodomy on the appellant. The appellant told PV2 New that he left the area before any sodomy occurred.

On cross-examination, the defense counsel challenged PV2 New's credibility by exploring the grant of leniency, PV2 New's Canadian conviction for vehicular homicide, his stint in an Arkansas mental hospital as the result of a suicide attempt, his false claims to medical authorities that he was a Special Forces

---

2. Private New disclosed that he was facing trial by court-martial himself for manslaughter, absence without leave, and other military offenses. Canadian authorities had already tried him for dangerous driving that had caused the death of his best friend, another soldier. The military manslaughter charge apparently involved the

same death. In exchange for delaying his own trial until he testified against the appellant and PFC Ransom, the grant of leniency involved dropping the manslaughter charge and limiting any sentence on the other offenses to time served in pretrial confinement.

sergeant, and his possible access to transcripts of the appellant's and PFC Ransom's Article 32, UCMJ, hearings while he was their cellmate.

Switching tactics, the defense then sought to elicit additional statements that the appellant made to PV2 New. Specifically, the defense asked PV2 New if the appellant also stated that, at the time of the kidnapping, PFC Ransom pointed a gun at him in the car and ordered him to drive. The military judge sustained a hearsay objection to this testimony, although the defense counsel argued that the "rule of completeness" made the additional statements admissible. This ruling and the military judge's response to subsequent attempts to introduce the same evidence form the basis for the appellant's first assignment of error.

Later in the cross-examination, the defense counsel asked PV2 New if, during a separate conversation with PFC Ransom, PFC Ransom admitted pointing a gun at the appellant. The military judge again sustained a hearsay objection, with comments suggesting that he considered this as the same question the defense had asked earlier. The defense counsel pointed out that he was trying to elicit statements of PFC Ransom to PV2 New, not statements of the appellant to PV2 New, and that the penal interest exception to the hearsay rule applied. In an Article 39(a), UCMJ, session, the defense made a more complete proffer of the out-of-court statement of PFC Ransom that he intended to elicit, but the military judge sustained the prosecution's hearsay objection. This ruling is the basis of the appellant's second assignment of error.

At the conclusion of the government's case, the defense counsel asked the military judge to reconsider his rulings on the admissibility of the statements that the appellant and PFC Ransom had made to PV2 New. As a proffer of what PV2 New would say, the defense asked that PV2 New's sworn statement, previously marked as a defense exhibit but not admitted, be made an appellate exhibit. The military judge indicated that remarking the statement was not necessary, and adhered to his earlier rulings.

## C. The Appellant's Testimony

The appellant testified on the merits, and in general, his testimony was consistent with his pretrial statement to the police. He testified that he and PFC Ransom were riding around and listening to music, as they had done many times before. Because PFC Ransom liked to drink (and had drunk to the point of vomiting earlier that evening), the appellant was driving PFC Ransom's car. Although the appellant had consumed some beer himself, he testified that he was not drunk. He indicated that on previous occasions when he and PFC Ransom had gone out, PFC Ransom flirted with women he met.

The appellant testified that he was driving in the general area of his home when PFC Ransom told him to stop near two young women and then left the car. The appellant was collecting his compact disks from the floor of the car and did not hear or see what went on after he stopped the car. When he looked up again, CM was climbing into the car's rear seat with PFC Ransom, apparently willingly. The appellant denied hearing any screaming or crying, but on cross-examination, admitted that he heard some screaming and yelling when the back door was opened.

In details not included in his taped or oral statements to the police, the appellant testified that after PFC Ransom entered the car, PFC Ransom put a gun to the appellant's face and ordered him to drive away. He was scared because PFC Ransom was drunk, so he complied. While driving, the appellant looked into the back seat and saw PFC Ransom on top of CM. He began hitting PFC Ransom in the side repeatedly with his fist in an effort to get his attention.

The appellant testified that he stopped the car at a dead end in a wooded area pursuant to PFC Ransom's instructions. He exited the car with PFC Ransom and CM. He initially denied noticing that CM was nearly naked, but admitted during recross-examination that she was naked from the waist down when they went through the barbed wire fence into the woods. He again denied that CM performed oral sodomy on him. He testified that when PFC Ransom told CM to perform oral sodomy on him, the appellant gave PFC Ransom "a look," and PFC Ran-

som responded by telling him to move the car. The appellant then left the area because he did not want to have anything to do with what he expected was going to happen: that PFC Ransom was going to rape CM. When he got back to the car, he drove off, leaving CM and PFC Ransom in the woods.

The appellant testified that after being stopped, he lied to the police officers about being on his way to a club in Seattle because things "looked bad" for him.

Based on the appellant's testimony that he was in fear of PFC Ransom because PFC Ransom was drunk and had pointed a weapon at his head in the car, the military judge instructed the court members on the defense of duress with regard to both offenses of which the appellant was convicted.

## DISCUSSION

### A. The "Rule of Completeness"

■ The appellant contends that the military judge erred by refusing to permit PV2 New to testify to the following statement: "Benton said Ransom put the gun to his [Benton's] head and said 'drive, drive, go' or words to that effect." [3] We review rulings of the military judge excluding evidence for abuse of discretion. *See United States v. Hyder*, 47 M.J. 46, 48 (1997); *United States v. Brown*, 48 M.J. 578, 582 (Army Ct.Crim. App.1998).

To determine whether the trial judge abused his discretion, we must consider the relationship between the evidentiary codifications of the common law "rule of completeness" and other evidentiary rules. Before this court, as before the trial court below, the appellant contends that the rule of completeness is a rule of admissibility. Government counsel argue that the rule of completeness is merely a rule of timing that permits contemporaneous admission of the remainder of a statement upon cross-examination, but only when the remainder is otherwise admissible under the rules of evidence.

The trial counsel correctly noted that the proffered statement was hearsay. *See* Mil. R.Evid. 801(c).[4] The trial counsel argued that, because it was hearsay, the remainder of the appellant's statement to PV2 New had to fit under an exception to the hearsay rule in order to be admissible, the rule of completeness notwithstanding.

The Military Rules of Evidence actually contain two rules codifying the common law "rule of completeness." The first, identical to its federal counterpart,[5] is found in Mil. R.Evid. 106, which provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require that party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

The second rule of completeness has no federal counterpart. Military Rule of Evidence 304(h)(2) provides: "If only part of an alleged admission or confession is introduced against the accused, the defense, by cross-examination or otherwise, may introduce the remaining portions of the statement." Our superior court has indicated that Mil.R.Evid. 304(h)(2) and Mil.R.Evid. 106 share the same

---

3. The initial proffer was not quite as explicit. The defense counsel asked PV2 New, "Isn't it true that Benton told you that Ransom pointed the gun at him?" During the Article 39(a), UCMJ, session held at the conclusion of the government's case-in-chief, the defense proffered PV2 New's sworn statement, taken by the trial counsel, which included the language quoted above. While the military judge might have been confused by the initial proffer, PV2 New's statement was more than adequate under Military Rule of Evidence 103(a)(2) [hereinafter Mil. R.Evid.] to apprise the military judge of the substance of the evidence the defense sought to elicit through cross-examination of PV2 New.

4. The appellant's statement to PV2 New was an out-of-court declaration offered to prove the truth of the matter asserted—that PFC Ransom put a gun to his head. The statements of the appellant to PV2 New, when offered by the government, were not hearsay as they were admissions by a party opponent. *See* Mil.R.Evid. 801(d)(2)(A). When offered by the appellant, however, the appellant's earlier statements would be hearsay.

5. Federal Rule of Evidence 106 [hereinafter Fed. R.Evid.] partially codified the common law rule of completeness. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988).

policy basis. *See United States v. Morgan,* 15 M.J. 128, 131–32 & n. 5 (C.M.A.1983).

As the government introduced an oral statement of the appellant to PV2 New, Mil. R.Evid. 106, by its own terms, would not apply, as that rule is limited to writings or recorded statements.[6] The trial defense counsel specifically argued that the statements were admissible under Mil.R.Evid. 304, although both counsel and the military judge used the term "rule of completeness" in litigating the admissibility of the statement.

The military judge agreed with the trial counsel that the rule of completeness was not a rule of admissibility and did not overcome the hearsay nature of the appellant's statement to PV2 New. In this appeal, with citations primarily to federal decisions, the government again contends that Mil.R.Evid. 304(h)(2) does not operate as an exception to the hearsay rule.[7] These federal precedents have only limited applicability to the military justice system, however, as Mil.R.Evid. 304(h)(2) is, manifestly, a rule of admissibility.[8]

■ The language in Mil.R.Evid. 304(h)(2) providing that the defense "may introduce the remaining portions" makes it clear that, once the government has introduced part of a statement, the decision to offer the remainder is a tactical call by the defense. It is not, as government appellate counsel urge, mere-ly a rule of fairness that gives the military judge the discretion to admit the remainder of an accused's statement, provided those portions are otherwise admissible under another evidentiary rule.

■ We hold that Mil.R.Evid. 304(h)(2) provides, as it plainly states, that the defense may introduce into evidence the remainder of an oral statement of an accused when the government has introduced only a portion of it, notwithstanding the hearsay nature of an accused's pretrial statements when offered by the defense.[9] We need not decide whether Mil.R.Evid. 106 is a rule of admissibility rather than a rule of timing, because the appellant's statements were admissible under Mil.R.Evid. 304(h)(2).

■ The defense sought to introduce the statement by cross-examining PV2 New about the remainder of the appellant's admission. Defense cross-examination of a witness who has testified to oral inculpatory statements of an accused is an appropriate means to introduce other, contemporaneously made, exculpatory statements of an accused. To hold otherwise could lead to absurd results. For example, in a murder case, it would be error to permit the government to introduce an oral statement of the accused in which he admitted firing the fatal shot, while prohibiting cross-examination of the same witness about the accused's next utterance—that he had fired the fatal shot only because the victim was coming at him with a loaded

---

6. *But see United States v. Alvarado,* 882 F.2d 645, 650 n. 5 (2d Cir.1989) (holding that Fed.R.Evid. 106 and Fed.R.Evid. 611(a) make the rule of completeness applicable to oral statements as well); *United States v. Li,* 55 F.3d 325, 329 (7th Cir.1995). The position of other circuit courts of appeals on the applicability of the rule of completeness to oral statements is less clear. *See, e.g., United States v. Collicott,* 92 F.3d 973 (9th Cir.1996); *United States v. Branch,* 91 F.3d 699 (5th Cir.1996).

7. The federal circuit courts of appeals are split as to whether Fed.R.Evid. 106 is a rule of admissibility, providing an independent basis to admit evidence that would otherwise be inadmissible. *Compare United States Football League v. National Football League,* 842 F.2d 1335, 1375–76 (2d Cir.1988), *and United States v. Terry,* 702 F.2d 299 (2d Cir.1983) (holding that Fed.R.Evid. 106 does not compel introduction of evidence otherwise inadmissible), *with United States v. Sutton,* 801 F.2d 1346, 1368–69 (D.C.Cir.1986) (interpreting Fed.R.Evid. 106 to permit admission of some otherwise inadmissible evidence). *See also United States v. LeFevour,* 798 F.2d 977, 980–82 (7th Cir.1986) (commenting that otherwise inadmissible evidence may be admitted under Fed. R.Evid. 106 when necessary to correct a misleading impression given by offering only a portion of it).

8. The predecessor rule, found in paragraph 140a(6) of the *Manual for Courts–Martial, United States* (1969 ed.), was clearly a rule of admissibility as well.

9. We specifically limit this holding to statements of the accused offered under Mil.R.Evid. 304(h)(2). Our superior court has indicated that other evidentiary rules may limit introduction of the remainder of statements offered under Mil. R.Evid. 106. *See United States v. Cannon,* 33 M.J. 376, 383 (C.M.A.1991).

firearm. We do not believe the drafters of the Military Rules of Evidence intended such an absurd result, particularly in light of Mil. R.Evid. 102's admonition to construe evidentiary rules "to the end that the truth may be ascertained and proceedings justly determined."

We conclude that the military judge misinterpreted Mil.R.Evid. 304(h)(2)'s rule of completeness and thus abused his discretion in refusing to permit the defense to elicit exculpatory hearsay statements of the appellant. *See United States v. White*, 48 M.J. 251, 257 (1998) (finding error when "conclusions of law are influenced by an erroneous view of the law"). Military Rule of Evidence 304(h)(2) made this hearsay evidence admissible and the court members should have been permitted to hear it.[10]

We do not, however, find that this erroneous ruling prejudiced the appellant. The appellant himself testified that PFC Ransom put a gun to his head in the car after PFC Ransom had abducted CM. The evidence of duress was thus squarely before the court members, and after being appropriately instructed on this defense, they rejected it.

Because the ruling did not deprive the appellant of a defense, the error was not of constitutional dimensions. *See United States v. Garcia*, 44 M.J. 27, 32 (1996). The test for nonconstitutional error is " 'whether the error itself had [a] substantial influence' " on the findings. *United States v. Armstrong*, 53 M.J. 76, 81 (2000) (citations omitted). Our superior court has analyzed the prejudicial impact of a military judge's erroneous exclusion of evidence by weighing: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Moolick*, 53 M.J. 174, 177 (2000) (citing *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A.1985)).

The government's case with regard to the kidnapping and sodomy offenses was very strong. CM testified that the driver of the car grinned or smiled while observing her being sexually assaulted by PFC Ransom.[11] She also testified that the driver announced that it was "his turn" when he stopped the car in the wooded area. She indicated that she was forced to perform fellatio upon the driver. Civilian police arrested the appellant a few hours after CM's abduction while he was driving a car containing CM's clothing, and the appellant confessed that he was the driver of the car in which CM was abducted. CM was a highly credible witness without a motive to lie. She provided compelling, consistent testimony.

Conversely, the defense's case was very weak. The appellant's trial testimony, like his oral statement to the police when they arrested him on the highway, was inconsistent and illogical. His testimony provided significant information not included in his taped statement to the police. The appellant's claim of duress was undercut because he failed to mention having a loaded gun pointed at his head when he made his statement to police the morning after these events. The appellant's claim of duress was more severely undercut by his testimony that he repeatedly struck PFC Ransom in the car, presumably without fear of being harmed.

The materiality of the excluded statement is questionable. The appellant provided direct testimony that he was under duress

---

10. We also hold that the defense made an adequate proffer of the nature and substance of the excluded testimony. *See* Mil.R.Evid. 103(a)(2). While PV2 New's trial testimony suggested that the exculpatory statements were made in a different conversation from the inculpatory statements, the military judge's repeated interruptions of the defense counsel's attempts to lay a foundation prevented clarification of this issue. The written statement of PV2 New, tendered as part of the defense proffer, clearly reflects that the inculpatory and exculpatory statements were made during the same conversation. We do not

find it necessary to decide, as the Air Force court did in *United States v. Benson*, 48 M.J. 734, 740 (A.F.Ct.Crim.App.1998), whether statements must be made contemporaneously to be admissible under Mil.R.Evid. 304(h)(2)'s rule of completeness.

11. Neither counsel questioned CM about observing the appellant striking PFC Ransom in the car when CM testified during the government's case-in-chief. Neither side recalled her after the appellant testified.

when he participated in CM's kidnapping,[12] testimony that the court members rejected. Having PV2 New testify that the appellant made a similar self-serving statement to him would not increase the probative value of the appellant's assertion, and would be cumulative. Mere repetition of a statement does not make it more probable or true.[13]

Finally, the quality of the proffered evidence was poor. Private New's own credibility as a witness was severely undermined by the earlier defense cross-examination; his testimony about what the appellant had allegedly told him was unlikely to be given much weight by the court members as a result. More significantly, during direct examination, the appellant denied having the conversation in question with PV2 New. He suggested that PV2 New's knowledge of the events to which he testified derived from reading the transcript of the Article 32(b), UCMJ, investigation that the appellant kept in his cell. By denying that the conversation to which PV2 New testified actually occurred, the appellant impaled himself on the horns of a dilemma: on the one hand arguing that his statements to PV2 New were admissible under the rule of completeness and on the other hand arguing that there were no statements to complete. He is now in no position to claim that he was gored.

Had the appellant's statement to PV2 New been admitted, we are confident that the credibility assessment would still have heavily favored CM's recitation of events. Having no " 'grave doubts' " about the impact of the excluded evidence on the results obtained at trial, we conclude that the appellant suffered no material prejudice from the erroneous exclusion of PV2 New's testimony. *See* UCMJ art. 59(a), 10 U.S.C. § 859(a); *United States v. Pollard,* 38 M.J. 41, 52 (C.M.A.1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

### B. Statements Against Penal Interest

The appellant also challenges the military judge's ruling excluding testimony by PV2 New that, when he asked PFC Ransom why he had threatened the appellant with a gun, PFC Ransom responded that "he [PFC Ransom] did it, but said he did not know why, but that it probably was the alcohol." The defense argued that the testimony was admissible as a statement against PFC Ransom's penal interest.

We ordinarily review a military judge's ruling excluding evidence for an abuse of discretion. *See Hyder,* 47 M.J. at 48; *Brown,* 48 M.J. at 582. In this case, our review is, of necessity, less deferential because, in spite of the defense counsel's request for findings of fact and conclusions of law as to whether the statement was admissible and in spite of the military judge's agreement to make such findings, the military judge never made them. He simply ruled the proffered statement "untrustworthy." *Cf.* Rule for Courts–Martial 905(d); *United States v. Agosto,* 43 M.J. 745, 748 (A.F.Ct. Crim.App.1995) ("Where the military judge's findings are silent or clearly erroneous, we may exercise our statutory authority under [Article 66, UCMJ] and find the facts ourselves.").

When the standard of review is abuse of discretion, and we do not have the benefit of the military judge's analysis of the facts before him, we cannot grant the great deference we generally accord a trial judge's factual findings because we have no factual findings to review. *See United States v. Langston,* 50 M.J. 514, 517 n. 6 (Army Ct. Crim.App.1999), *aff'd,* 53 M.J. 335 (2000). Nor do we have the benefit of the military judge's legal reasoning in determining whether he abused his discretion in ruling the statement inadmissible. *Cf. United States v. Reinecke,* 30 M.J. 1010, 1015 (A.F.C.M.R.1990), *rev'd on other grounds,* 31 M.J. 283 (C.M.A.1990) ("Without a proper

---

12. The military judge instructed the court members that the duress defense applied to all of the charged offenses. While nothing precludes the use of inconsistent defenses, the appellant persistently denied having oral sex with CM.

13. We note that prior consistent statements offered to rebut a charge of recent fabrication must, in most cases, be made before the motive to fabricate arose. *See* Mil.R.Evid. 801(d)(1)(B); *United States v. Hood,* 48 M.J. 928, 932–33 (Army Ct.Crim.App.1998). This potential basis for admissibility was not raised at trial.

statement of essential findings, it is very difficult for an appellate court to determine the facts relied upon, whether the appropriate legal standards were applied or misapplied, and whether the decision amounts to an abuse of discretion or legal error.").

In spite of this difficulty, we do not perceive an abuse of discretion on this record. Even applying a de novo standard of review, we are confident that the military judge did not err in refusing to admit PFC Ransom's statements to PV2 New because we find that the statement was not one clearly against PFC Ransom's penal interests as defined by Mil.R.Evid. 804(b)(3).

■ Military Rule of Evidence 804(b)(3) provides that "[t]he following [statements] are not excluded by the hearsay rule if the declarant is unavailable as a witness":

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

For PFC Ransom's statements to PV2 New to be admissible under this rule, the defense had to establish: (1) that PFC Ransom was unavailable (*see* Mil.R.Evid. 804(b)); (2) that the statement was sufficiently contrary to PFC Ransom's penal interest that a reasonable person in his position would not have made it unless he believed it to be true; and (3) that corroborating circumstances made the statement trustworthy.

## 1. Unavailability

For purposes of analysis, we accept that PFC Ransom was unavailable. The defense twice asked the military judge to so rule, and, in spite of his agreement to do so, the military judge failed to explicitly make that ruling. From the record, it is clear that PFC Ransom was facing significant criminal liability for his alleged role in the abduction, rape, and sodomy of CM. Under these circumstances, we will presume that he would invoke his Article 31, UCMJ, 10 U.S.C. § 831, rights against self-incrimination if called as a witness, and was thus unavailable within the meaning of Mil.R.Evid. 804(b).[14]

## 2. Against Penal Interest

Whether the statement was one against PFC Ransom's penal interest is a question of law. *See United States v. Bagley,* 537 F.2d 162, 165–66 (5th Cir.1976).

The evidentiary rule itself appears to incorporate aspects of both a subjective and an objective standard in determining this issue. It requires that the statement be so against one's interest that "a reasonable person *in the position of the declarant*" would not have made it unless the statement were true. Mil. R.Evid. 804(b)(3) (emphasis added). Our superior court has applied a subjective test, holding that the criterion is "whether the declarant would himself have perceived at the time that his statement was against his penal interest." *United States v. Greer,* 33 M.J. 426, 430 (C.M.A.1991).

■ At the time PFC Ransom made the statement, he was in pretrial confinement facing a life sentence for kidnapping and raping CM. The admission occurred while he was engaged in a casual discussion with a fellow detainee about why he carried a gun. As PFC Ransom told PV2 New, he always carried a gun to protect himself and his family because there are "a lot of people doing some . . . fucked up shit." Thereafter,

**14.** When the prosecution is seeking to admit the statement of a co-actor against an accused, our superior court has indicated that, absent extraordinary circumstances, the statement will not be admitted on the basis that the witness is unavailable due to an exercise of the right against self-incrimination, as the government may immunize the co-actor. *See United States v. Dill,* 24 M.J. 386, 389 (C.M.A.1987). We will not apply the same requirement to the accused, as defense requests for immunity, particularly for a co-accused, require an extremely high showing of necessity. *See United States v. Ivey,* 53 M.J. 685 (Army Ct.Crim.App.2000).

PV2 New asked PFC Ransom: "Why did you point a gun at your boy's head," to which PFC Ransom responded: "I guess because I was drunk or something." It does not appear from the tenor of the conversation that PFC Ransom had any suspicion that his cellmate might be working for the government, and thus that his statement might be used against him. Subjectively, PFC Ransom did not appear to regard his statement as damaging. He appeared oblivious to the fact that he was one of those armed people from whom others might need to protect themselves.

The statement is not one clearly against PFC Ransom's penal interest. The inculpatory aspects of PFC Ransom's tacit admission that he pointed a gun at the appellant are mitigated by the excuse of inebriation. There are no indications in the record that PFC Ransom perceived his statement to be disserving or damaging. The degree to which a statement is inculpatory is a factor we consider in determining its admissibility under Mil.R.Evid. 804(b)(3). *See generally United States v. Burks*, 36 M.J. 447, 451 n. 2 (C.M.A.1993).

On the other hand, PV2 New appeared to view the statement as sufficiently significant to warrant inclusion in his own sworn statement to prosecutors. Presumably PV2 New was aware that the government wanted to perfect its cases against the appellant and PFC Ransom, and was thus interested in inculpatory statements of either. Since the statement did not by any stretch of the imagination inculpate the appellant, presumably PV2 New viewed it as inculpating PFC Ransom.

Statements against penal interest are recognized as an exception to the hearsay rule because they are likely to be true. *See Greer*, 33 M.J. at 430. A rational person usually does not confess to offenses unless he has, indeed, committed them. In context, however, PFC Ransom's statement is not clearly inculpatory. It stops short of an admission by PFC Ransom that he attempted or offered with unlawful force or violence to do bodily harm to his friend. The statement is consistent with something other than an act of violence by PFC Ransom toward the appellant. When PFC Ransom pushed his screaming and struggling victim into the back seat of his car, he had just used the weapon to assault PFC Ruiz. Once in the car, PFC Ransom may well have waived the gun about, and, in the process, pointed it at the appellant as he directed the appellant to drive off. We are unconvinced that an admission to an inadvertent or momentary pointing of the weapon at the appellant when inebriated would have been perceived by a reasonable person in PFC Ransom's position to be against his penal interest. The statement is more consistent with an acknowledgment of poor weapons discipline than a deliberate threat or an assault upon the appellant. *See United States v. Warner*, 25 M.J. 738, 740 (A.F.C.M.R.1987) (commenting that the context in which statements are made may reflect whether the declarant's penal interests are "realistically affected").

We conclude that this statement was not clearly against PFC Ransom's penal interest. Assuming, arguendo, that the statement was sufficiently against PFC Ransom's penal interest to be admissible on that basis, we will examine the third requirement for admissibility under Mil.R.Evid. 804(b)(3).

### 3. Trustworthiness

The appellant's third hurdle is proof that the statement was trustworthy. Because the statement was offered to exculpate the appellant, he had the burden to demonstrate corroborating circumstances that clearly indicated the statement's trustworthiness. *See Burks*, 36 M.J. at 450–51. The military judge's failure to make explicit findings of fact and conclusions of law is particularly significant here. The military judge simply found the statement "untrustworthy." We are at a loss to know whether he did so because of the appellant's failure to demonstrate corroborating circumstances indicative of trustworthiness or because he found PV2 New's testimony unbelievable.

The distinction is significant, because PV2 New's credibility was severely challenged on cross-examination. If the military judge determined the testimony inadmissible *solely* because he disbelieved PV2 New, he abused his discretion. *See United States v. Nutter*,

22 M.J. 727, 730 n. 2 (A.C.M.R.1986) (fact-finders, not the military judge, must determine whether a witness is believable).[15] Since we are unable to determine from the record before us why the military judge ruled as he did, we will grant him little deference on the issue of trustworthiness. *But see Bagley*, 537 F.2d at 166–67 (applying a "clearly erroneous" standard of review to a trial judge's determination that a statement lacked trustworthiness, in spite of the trial court's failure to make factual or legal findings).

■ In *United States v. Rasmussen*, the Eighth Circuit Court of Appeals listed five factors it found significant in determining the trustworthiness of a statement against penal interest: (1) the motive, if any, of the out-of-court declarant to misrepresent the matter; (2) the character of the out-of-court declarant; (3) the presence or absence of witnesses to the out-of-court statement; (4) whether the statement was spontaneous; and (5) the timing of the statement and relationship between the declarant and the witness. 790 F.2d 55, 56 (8th Cir.1986). Only the first factor clearly favors admissibility of the relevant statement in this case.

Private First Class Ransom had no motive to misrepresent the appellant's culpability—at least not to exculpate the appellant. Not only had the appellant left him stranded in the woods with his victim, the appellant had also made statements to the authorities implicating PFC Ransom in serious criminal activity.

The last factor could favor admissibility, for the relationship between PFC Ransom and PV2 New would suggest the statement's reliability. While it was made in a custodial setting, the statement was communicated from one inmate to another, rather than to one in a position of authority. On the other hand, PFC Ransom may have had some motive to exaggerate the nature of his own

actions, as an expression of prison bravado. The tenor of his statements suggested just that. *Cf. United States v. Dillon*, 18 M.J. 340, 344 (C.M.A.1984) (considering surrounding circumstances in concluding that the declarant likely considered his admission of drug usage innocuous). The tone of the conversation did not suggest that PFC Ransom was willingly shouldering the criminal liability for what occurred in an effort to protect the appellant. Rather, it suggested that PFC Ransom failed to appreciate the criminal nature of his own conduct, whether in assaulting CM, PFC Ruiz, or the appellant.

The remaining three factors do not support a finding of trustworthiness. There were no witnesses to PFC Ransom's admissions, other than PV2 New. The statement was made in response to a leading question. What little we know of PFC Ransom's character is based on the trial testimony about him. If we believe the appellant's own testimony, on the evening in question PFC Ransom was drunk to the point of vomiting, and PFC Ransom's response to PV2 New indicated that he was drunk. As we are unable to test PFC Ransom's ability to recall exactly what he did with the handgun when he entered the car, we have no way to determine the reliability of any assertion that he pointed the handgun at his friend.

■ Military Rule of Evidence 804(b)(3) requires clear corroboration before a statement against interest may be considered to exculpate an accused. *See United States v. Vazquez*, 18 M.J. 668, 670 (A.C.M.R.1984); *United States v. Robinson*, 16 M.J. 766, 767 (A.C.M.R.1983). While other trial evidence established that PFC Ransom owned a handgun and had it in his possession that evening, the appellant's own testimony provides the only corroboration that the handgun was pointed at him in the car. Such corroboration has been held inadequate. *See Burks*, 36 M.J. at 450–51 (indicating that corrobora-

---

15. Most federal courts apply a different rule, permitting the trial judge to weigh the credibility of the in-court witness in determining whether the proffered testimony is trustworthy. *See, e.g., United States v. Bobo*, 994 F.2d 524, 528 (8th Cir.1993); *United States v. MacDonald*, 688 F.2d 224, 233 (4th Cir.1982). *But see United States v. Katsougrakis*, 715 F.2d 769, 777 (2d Cir.1983).

The Navy–Marine Corps court has considered the trustworthiness of the person testifying to the out-of-court declaration in determining whether the out-of-court statement is trustworthy and therefore admissible. *See United States v. Garrett*, 16 M.J. 941, 946 (N.M.C.M.R.1983), *aff'd*, 24 M.J. 413 (C.M.A.1987).

tion of portions of a statement was insufficient to corroborate the exculpatory aspects vis-à-vis the appellant). Both CM's testimony, which indicates that the appellant shared PFC Ransom's lascivious motives, and the nature of the relationship between the appellant and PFC Ransom serve to contradict the appellant's assertion that he was threatened by PFC Ransom.

■ The appellant also argues that the failure to admit PFC Ransom's statement to PV2 New violated constitutional due process by depriving him of relevant and trustworthy exculpatory evidence, citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *United States v. Johnson*, 3 M.J. 143 (C.M.A.1977). We hold that the appellant failed to establish the statement's trustworthiness, a threshold requirement for the admission of any evidence. In *Chambers*, the Supreme Court emphasized the considerable assurances of reliability of the excluded evidence. *Id.* at 300, 93 S.Ct. 1038. Such assurances are sorely lacking in this case. The Constitution does not compel courts to consider untrustworthy evidence.

In *Johnson*, 3 M.J. at 147, our superior court considered a number of factors bearing on the trustworthiness of a statement offered to exculpate the accused pursuant to *Chambers*.[16] They included: the voluntary nature of the statement; whether Article 31, UCMJ, warnings were given; the level of detail provided about the crime's commission; the statement's consistency (internally and with other evidence adduced); the declarant's motive to commit the offense; the degree to which the statement was inculpatory to the declarant; the presence of witnesses to the declaration; and the level of corroboration available from other witnesses. These factors track closely with those used to evaluate trustworthiness in *Rasmussen*, 790 F.2d at 56. Considering each of these factors relied upon in *Johnson*, we hold that the appellant has failed to demonstrate the trustworthiness of PFC Ransom's statement to PV2 New. The military judge's refusal to admit the statement thus did not violate the appellant's right to constitutional due process.

We have considered the remaining assignment of error and the appellant's submissions pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit. Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge CAIRNS and Judge BROWN concur.

---

**16.** This case was tried before the Military Rules of Evidence were adopted. *See Johnson,* 3 M.J. at 146 n. 3.