**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Timothy Lavon BUMPASS,
Defendant–Appellant.**

**No. 94–5421.**

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1995.

Decided July 28, 1995.

---

**ARGUED:** William Joseph Cotter, Rigsbee & Cotter, Durham, NC, for appellant. Sandra Jane Hairston, Sp. Asst. U.S. Atty., Greensboro, NC, for appellee. **ON BRIEF:** Walter C. Holton, Jr., U.S. Atty., Greensboro, NC, for appellee.

Before HALL and NIEMEYER, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge HALL and Senior Judge PHILLIPS joined.

## OPINION

NIEMEYER, Circuit Judge:

At 11:00 p.m. on September 3, 1993, at a McDonald's restaurant in Durham, North Carolina, a fight which had begun earlier between two groups of men resumed. Wallace Jones and Christopher Hunter were fighting Kamal Bradshaw, Antoine Braswell, and Charlie Wilkerson. Jones was engaged with Bradshaw while Hunter was engaged with Braswell and Wilkerson. During the course of the brawl, the defendant Timothy Lavon Bumpass entered the restaurant and allegedly stated to Jones, "Get off my cousin," and then fired a 9mm gun, hitting Jones in the thigh four times. The victim Jones testified that when he was shot he was looking Bumpass straight in the face. Jonathan Whitaker, who had seen Bumpass shortly before the fight outside the restaurant leaning against a Mercedes Benz, witnessed the shooting, as did Jones' friend, Hunter. Jones, Whitaker, and Hunter all testified that Bumpass had used a 9mm handgun, and Hunter stated that he had seen Bumpass on a previous occasion with this firearm. After the shooting, Bumpass fled the restaurant.

Braswell testified to the contrary, stating that after Bumpass came into the restaurant and said, "Get off my friend," it was Wilkerson who then came in and shot Jones. Braswell testified that he accompanied Wilkerson thereafter when Wilkerson threw an "object" or "pistol" into a pond. Braswell did not know what type of gun was disposed of or what type Wilkerson had been carrying.

After the police arrived, they recovered one bullet and two shells from the floor of the restaurant where Jones had been shot and a number of other shell casings from outside the restaurant near the Mercedes. They also recovered a loaded 9mm clip from the Mercedes. Hunter testified that the loaded 9mm clip was his and that he owned a 9mm handgun "for protection." Ballistic tests revealed that the shells and the bullet were fired from a single 9mm gun, but the gun was never recovered.

Bumpass was later arrested and charged with possession of ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).[1] Following his conviction by a

---

1. While there was ample evidence that Bumpass also possessed a firearm, he was charged with possessing ammunition because the ammunition was recovered and the brand was identified as coming from outside the state, thus satisfying the commerce requirement of 18 U.S.C. § 922(g)(1).

jury, the court sentenced him to 262 months imprisonment.

On appeal Bumpass challenges his conviction, contending that at trial the district court improperly excluded a statement written by Wilkerson confessing that it was he (Wilkerson) who shot Jones on the night in question. Bumpass also contends that the district court improperly displayed partiality by making certain comments during trial and by aggressively questioning a witness. For the reasons that follow, we affirm.

## I

A few days after Wallace Jones was shot but before defendant Bumpass was arrested, Charlie Wilkerson, a friend of Bumpass, went to see Durham Police Detective Dowdy and gave a written statement confessing to having shot Jones. The government produced the statement, written in Wilkerson's own hand, to Bumpass before trial.

At trial, Bumpass called Wilkerson to testify in Bumpass' defense. When asked whether he shot Jones, Wilkerson invoked his Fifth Amendment privilege against self-incrimination and refused to testify. Bumpass then sought to introduce Wilkerson's written statement as a declaration against interest under Federal Rule of Evidence 804(b)(3).[2] At the bench conference which followed to determine whether to allow Wilkerson to refuse to testify and whether to admit his written statement under Rule 804(b)(3), the court asked Agent McCluny, the government's investigator, whether he thought Wilkerson was involved in the shooting. McCluny stated:

> I don't think he did the shooting. Through the investigation we found there was some talk with reference to someone being paid to step forward for the shooting; and that's the reason why [Wilkerson], in my opinion, has come forward to say that he's

done it; because he doesn't have a criminal record.

The court, expressing concern about "someone paying [Wilkerson]" to take the fall, stated, "If he's lying, I think he ought to go to jail." The court then allowed Wilkerson to refuse to testify, but also refused to admit Wilkerson's written statement without further corroboration or clarification of the circumstances surrounding its creation. The court said to counsel during the bench conference on this issue:

> I think this case has gone a mighty long way on simple possession of ammunition. I think we ought to have all the witnesses—everybody interviewed—and see whether or not there is any shenanigan going on. If there is, I think we should issue bench warrants for everybody involved. Now, it's going to be up to you to get the bench warrant issued.

After observing skeptically that Wilkerson was "pretty smart," the court announced that it was not going to let his statement into evidence. Bumpass objected but took no further steps. He now challenges this evidentiary ruling.

Federal Rule of Evidence 802 provides that hearsay is not admissible into evidence except as provided by law, and Rule 804 provides exceptions to Rule 802 when the declarant is unavailable as a witness. In particular, Rule 804(b)(3) allows admission of hearsay of an unavailable declarant when

> [the] statement ... at the time of its making ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is *not admissible unless corroborat-*

**2.** This exception to the rule against hearsay provides that if the declarant is unavailable, the following type of statement is not excluded as hearsay:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant

against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Fed.R.Evid. 804(b)(3).

*ing circumstances clearly indicate the trustworthiness of the statement.*

(Emphasis added). Thus, hearsay may be admitted under this exception if (1) the declarant is unavailable, (2) the statement is genuinely adverse to the declarant's penal interest, and (3) "corroborating circumstances clearly indicate the trustworthiness of the statement." The party offering the statement bears the "formidable burden" of meeting the requirements of Rule 804(b)(3), and the court's decision on its admissibility is reviewed for abuse of discretion. *See United States v. MacDonald,* 688 F.2d 224, 233 (4th Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983).

In this case, satisfaction of the first two requirements is not disputed. Wilkerson, the declarant, was unavailable, having asserted his constitutional privilege against self-incrimination. *See* Fed.R.Evid. 804(a)(1); *United States v. Brainard,* 690 F.2d 1117, 1124 (4th Cir.1982). Wilkerson's statement was also adverse to his penal interest. A statement made to the police admitting involvement in a criminal act, such as that made by Wilkerson, is adverse because of the potential for criminal liability. *See Mac-Donald.*

■ It is the third requirement—the existence of corroborating circumstances—that is the center of contention in this case. In *Brainard,* we discussed the nature and purpose of the corroborating circumstances requirement in a case, similar to that now before us, where the declarant's statement "went to the heart of the defense." We observed:

> The requirement of corroborating circumstances was designed to protect against the possibility that a statement would be fabricated to exculpate the accused. Thus, the Advisory Committee explained the requirement of corroborating circumstances as follows:
>
> > [O]ne senses in the decisions a distrust of evidence of confessions by third persons offered to exculpate the accused arising from suspicions of fabrication either of the fact of the making of the confession or in its contents, enhanced in

either instance by the required unavailability of the declarant.
>
> F.R.Evid. 804(b)(3), Advisory Committee Notes. The rule requires not a determination that the declarant is credible, but a finding that the circumstances clearly indicate that the statement was not fabricated. It is the statement rather than the declarant which must be trustworthy.

690 F.2d at 1124. In explaining the burden on the offering party, we stated that the corroborating circumstances need not "remove all doubt with respect to the hearsay statement." *Id.* at 1125 n. 14. Rather, the rule requires only that the corroborating circumstances "clearly indicate the trustworthiness of the statement." *Id. See also* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence,* 804(b)(3)[03], at 804–155 (1994) ("the burden placed on the accused to corroborate should not be too high"). But it must be remembered that admission of such hearsay leaves the party against whom it is offered without the important benefit of cross examination. The level of corroboration therefore must be sufficient that cross examination would add little to test the hearsay's reliability.

■ Although the precise nature of the corroboration required by Rule 804(b)(3) cannot be fully described, the courts have identified several factors which are relevant to determining whether sufficient corroboration exists to justify admitting a statement under the rule, including (1) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement, (2) the declarant's motive in making the statement and whether there was a reason for the declarant to lie, (3) whether the declarant repeated the statement and did so consistently, (4) the party or parties to whom the statement was made, (5) the relationship of the declarant with the accused, and (6) the nature and strength of independent evidence relevant to the conduct in question. *See Brainard,* 690 F.2d at 1125; *United States v. Noel,* 938 F.2d 685, 688 (6th Cir.1991); *United States v. Slaughter,* 891 F.2d 691, 698 (9th Cir.1989).

To support his argument that Wilkerson's statement was sufficiently trustworthy to be

admitted, Bumpass relies on the fact that Wilkerson gave his statement to the police before Bumpass was arrested and that Wilkerson thereby exposed himself to criminal liability contrary to his penal interest. Bumpass notes further that Wilkerson was placed at the scene of the shooting by witnesses for both the prosecution and the defense, and that Wilkerson was involved in the fighting with Jones and Hunter which ended in Jones' being shot. Finally, Bumpass directs our attention to the evidence that Wilkerson later threw an "object" or "pistol" into a pond. Bumpass argues that any suggestions that Wilkerson agreed to take responsibility in exchange for money were just rumors without testimonial support, and that even the government's attorney agreed that such suggestions were "just allegations." At bottom, Bumpass maintains that corroborating circumstances clearly demonstrated the trustworthiness of Wilkerson's statement and that therefore the statement should have been admitted. Bumpass argues that in any event any question about Wilkerson's credibility should have been committed to the jury and not to the court.

The government, in response, contends that Wilkerson was a friend of the defendant Bumpass and had a motive to take responsibility for the shooting because of Bumpass' substantial criminal record. The government notes that Wilkerson's written statement to Detective Dowdy was given several days after the shooting and is directly contradicted by three eyewitnesses who identified Bumpass as the person who shot Jones on September 3. Further, one of the persons identifying Bumpass as the shooter, Jonathan Whitaker, was a friend of Bumpass who was reluctant to testify against him and was therefore, according to the government, particularly trustworthy. The government contends that Bumpass did not succeed in meeting his burden under Rule 804(b)(3) of indicating circumstances which corroborated the trustworthiness of Wilkerson's statement and that therefore the district court did not abuse its discretion in excluding the statement.

Recognizing that Bumpass carries the burden of clearly establishing by corroborating circumstances that Wilkerson's statement was trustworthy, we cannot say that the district court abused its discretion in concluding that Bumpass failed to satisfy this burden. The court expressly invited Bumpass to bring to court the witnesses who could corroborate the statement and testify to its circumstances. In the absence of further corroboration, however, we cannot conclude that the district court abused its discretion in finding the trustworthiness of the statement not clearly established. The trustworthiness of the statement was placed in some doubt by Agent McCluny and by the factual circumstances. Bumpass and Wilkerson were friends, and, because Bumpass apparently had a more substantial criminal history than Wilkerson, even though Wilkerson was on probation, Wilkerson would therefore receive a lesser penalty if he took responsibility for the shooting, as the parties realized. Thus, there was a motive for Wilkerson to give the self-inculpatory statement. While there is no evidence that Bumpass paid Wilkerson to take responsibility for the shooting, the specter of that possibility was never put in doubt or even questioned by any evidence presented by Bumpass. Moreover, three eyewitnesses testified that they saw Bumpass shoot Jones, including one of Bumpass' friends who expressed reluctance to testify against him. Even though the assessment of such evidence is the responsibility of the jury in determining the defendant's guilt, such evidence may also be considered by the court when ruling on the trustworthiness of hearsay, an evidentiary question which is committed to the court for decision. In the totality of these circumstances, we cannot say that the district court abused its discretion in excluding Wilkerson's written statement in the absence of corroborating circumstances clearly indicating the statement's trustworthiness.

## II

Bumpass also contends that the district judge made several comments to defense witnesses during trial which were unfairly prejudicial to him and which implied that the court had formed an opinion that he was guilty. *See United States v. Parodi,* 703 F.2d 768, 775–78 (4th Cir.1983) (assessing

whether the district judge displayed partiality depriving the defendant of a fair trial based on the judge's questioning of witnesses and other conduct). We have reviewed the portions of the transcript adverted to by Bumpass, including the judge's somewhat extensive examination of witness Christopher Hunter relating to a collateral issue of whether Hunter properly was in possession of a handgun, and conclude that the district judge's comments did not amount to a display of partiality sufficient to deprive Bumpass of a fair trial. Accordingly, we conclude that Bumpass was not deprived of his constitutional right to a fair and impartial trial.

For the reasons given, the judgment of the district court is

*AFFIRMED.*