**UNITED STATES, Appellee,**

v.

**Victor LEVY–CORDERO,**
**Defendant, Appellant.**

**No. 93–1679.**

United States Court of Appeals,
First Circuit.

Submitted March 7, 1995.

Decided Sept. 17, 1998.

discovery order requiring pre-trial notice of intent to offer an alibi defense. *See United States v. Levy Cordero*, 833 F.Supp. 938 (D.P.R.1993). However, it was later discovered that while similar discovery orders had issued to other defendants in the case, no such order had issued to Levy. *See Levy I*, 67 F.3d at 1014. We therefore ordered the district court to conduct a hearing to determine the reliability of the evidence that Levy was in Florida between March 19, 1987, and March 28 or 29, 1987. *See id.* at 1015. Now, based upon the evidence adduced at that hearing coupled with further analysis of the trial transcript from the underlying trial, we affirm Levy's conviction.

Jeffrey S. Weiner, Linda L. Houghtaling and Jeffrey S. Weiner, P.A. on brief, for appellant.

James K. Robinson, Assistant Attorney General, Criminal Division, U.S. Department of Justice, Theresa M.B. Van Vliet, Chief, Narcotic and Dangerous Drug Section, Criminal Division, U.S. Department of Justice, and Grace Chung Becker, Trial Attorney, Narcotic and Dangerous Drug Section, Criminal Division, U.S. Department of Justice, on brief, for appellee.

Before TORRUELLA, Chief Judge, COFFIN and CYR, Senior Circuit Judges.

TORRUELLA, Chief Judge.

In *United States v. Levy–Cordero*, 67 F.3d 1002 (1st Cir.1995) (*Levy I*), this court heard the appeals of three co-defendants convicted, *inter alia*, of taking part in a conspiracy to possess with intent to distribute over 1,000 kilograms of marijuana. We rejected the appeals of two of the defendants, but found that an error had been made in the trial of the third, Víctor Levy–Cordero. The trial court had erred as a matter of law when it excluded proffered evidence that Levy was in Florida during the same time that he was allegedly taking part in a large transfer of marijuana. *See id.* at 1015. The district judge excluded this evidence as a sanction for defense counsel's alleged willful violation of a

## BACKGROUND

The following facts were uncontradicted at trial, or were necessarily found by the jury to support the convictions of Levy's co-conspirators, William Romero–Lewis and José Samuel Forty–Estremera. On or about March 7, 1987, a group of co-conspirators rented a house near Naguabo, Puerto Rico, in order to stash large amounts of marijuana which would be arriving by ship from Colombia. Over the course of one weekend in March 1987, spanning from Friday to Sunday nights, the co-conspirators moved 5,000 pounds of marijuana from the Colombian ship near the Puerto Rican coast into a smaller boat, then onto the beach and into the stash house. They were later paid in cash and drugs. Levy was alleged to have taken part in this off-loading.

Throughout this case, the specific dates of the off-loading of the marijuana have been at issue. However, by a process of elimination, we can determine that the jury found the exact dates of the off-loading to be March 27, 28 and 29, 1987. As stated above, there was uncontradicted evidence at trial that the off-loading took place over three nights on a Friday, Saturday, and Sunday in March 1987.[1] The jury was instructed by the judge and by both parties in closing arguments that defendants must be acquitted for any actions occurring on the weekend of March 13–15 (or before) because they were beyond the statute

---

1. While the government has, at times during this case, suggested that the load may have arrived on the April 4–6 weekend, the evidence at trial did not support that chronology.

of limitations. Because Levy–Cordero was convicted, the jury must have concluded, consistent with the evidence adduced at trial, that the off-loading occurred on one of the two remaining weekends, either March 20–22 or March 27–29.

However, this does not exhaust our knowledge about the dates at issue. At trial, both parties agreed that a co-conspirator by the name of César Castro–Gómez was present during the off-loading. The jury was also presented with stipulated evidence proving that Castro was in Florida during the March 20–22 weekend. Thus, the jury must have concluded that the drugs were off-loaded on March 27–29, 1987.[2]

While his trial was in progress, Levy claims to have remembered where he was from March 19, 1987, through March 28–29, 1987. He allegedly traveled to Gainesville, Florida, to attend the National Hot Rod Association Gator Nationals drag races, occurring during the March 20–22 weekend. He then supposedly stayed in Florida until March 28 or 29. Levy's lawyer researched the alibi, and eventually concluded that the Florida alibi was "airtight," and that he could "account for [his] client's presence from the 19th to the 28th or 29th, that accounts for every possible date the witnesses claim the load occurred." His lawyer brought this information to the court's attention, and, after a contentious hearing on the admissibility of the evidence, the district court excluded it, concluding that the defense had willfully withheld the evidence from the prosecution and the court in violation of Fed.R.Crim.P. 12.1.

On appeal, we determined that, given the ambiguous text of the district court's Omnibus Order relating to alibi evidence, and the absence of an explicit Rule 12.1(a) demand

from the prosecution that Levy serve written notice of intent to offer an alibi, the district court's exclusion of Levy's potentially exculpatory alibi evidence was legal error. We ordered the district court to evaluate the content and reliability of the alibi evidence.

At his hearing on remand, Levy's "airtight" Florida alibi changed significantly from the story that he had told to the district court and this court the first time around. Despite promises that his Florida whereabouts from March 19 to March 28–29, 1987 would be documented with extensive records, photographs, and witness testimony, Levy was unable to turn up any documentary evidence that he was in Florida after March 24, 1987. Instead, Levy's alibi witnesses surprisingly testified unanimously at the hearing on remand that Levy was in Puerto Rico with them on Friday, Saturday and Sunday nights from March 27 to March 29, 1987. Whether or not the witnesses' testimony is true, it is now undisputed that Levy's story has changed, and that he was *not* in Florida on that weekend.

## ANALYSIS

### I. The Old Story

■ The purpose of the remand in this case was to determine whether the district court's error in excluding Levy's Florida alibi was harmful to Levy, i.e., whether it influenced the jury's verdict and thus affected Levy's substantial rights at trial. *See Levy I*, 67 F.3d at 1015 n. 15; *see also*, 28 U.S.C. § 2111 (trial error is harmless if it does not affect substantial rights); *Lataille v. Ponte*, 754 F.2d 33, 37 (1st Cir.1985) (same); Fed. R.Crim.P. 52 (defining "harmless error" as "any error, defect, irregularity or variance which does not affect substantial rights"). If

---

**2.** The significance of co-conspirator Castro's presence in Florida during the March 20–22 weekend went unnoticed by this court in *Levy I*, when we expressed uncertainty as to whether the jury concluded that the off-loading occurred on the weekend of March 20–22 or March 27–29. *See* 67 F.3d at 1013. This uncertainty can be further attributed to our failure to fully appreciate Miles Johnson's trial testimony. While our *Levy I* opinion noted Johnson's testimony that the load arrived a "week or two" after the stash house was rented, which could support the con-

clusion that the drugs arrived on the March 20–22 weekend, *see* 67 F.3d at 1012, a more thorough reading of his testimony reveals that he offered inconsistent testimony about whether the drug trafficking occurred on the March 20–22 weekend or the March 27–29 weekend. When coupled with the impossibility of Castro's participation in the off-loading during March 20–22, a fact which was highlighted by both parties in closing arguments, Johnson's testimony requires the conclusion that the drugs arrived on the March 27–29 weekend.

the evidence presented on remand was sufficiently reliable to allow a jury to find that Levy was in Florida at the time he was convicted of having off-loaded 5,000 pounds of marijuana, his substantial rights at trial would have been affected by the improper exclusion of that evidence. *See United States v. Mulinelli–Navas*, 111 F.3d 983, 992 (1st Cir.1997) (improper exclusion of reliable alibi evidence violates Sixth Amendment right to confrontation). A new trial must be ordered whenever substantial rights are affected by an error at a criminal trial and the government cannot prove harmlessness "beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Brennan*, 994 F.2d 918, 927 (1st Cir.1993) (where violation of Sixth Amendment right to confrontation is discovered on appeal, *Chapman*'s harmless error standard is applied).

■ However, it is obvious that exclusion of a false or utterly unreliable alibi does not affect substantial rights. The story that Levy presented to this court prior to remand, i.e., that he was in Florida for most of the March 27–29, 1987 weekend, was recanted on remand. Levy himself presented numerous witnesses who testified that Levy was in Puerto Rico at that time. We can, therefore, state with certainty that the district court's failure to place before the jury any evidence that Levy was in *Florida* during the relevant weekend was "harmless beyond a reasonable doubt."

## II. The New Story

As explained above, a curious and surprising development occurred on remand when Levy abandoned his claims of having been in Florida until March 28 or 29, 1987, and presented an entirely new alibi for the weekend of March 27–29, 1987. He now claims to have spent that time in Puerto Rico with three close friends, washing their cars and installing new tires. This evidence was never proffered at trial, and was thus outside of the scope of the remand which was ordered to determine the reliability of the proffered and excluded alibi evidence.

Nonetheless, in an ambiguous half-page ruling issued after the hearing on remand, the district court took no explicit notice of the fact that Levy's alibi had been changed. In fact, no specific factual findings were issued whatsoever. The ruling merely found that "the evidence presented in support of an alibi defense during the course of this hearing was reliable." According to Levy, this ruling should be construed as a finding of fact that *all* of his alibi evidence, including his new Puerto Rico alibi, is reliable evidence. In light of the fact that most of the testimony adduced at the hearing pertained to this new alibi, we agree that Levy's proposed construction of the ruling is sensible. We must, therefore, determine what effect, if any, this finding has.

■ Despite the fact that Levy's whereabouts for the March 27–29 weekend had been very much at issue for years, the evidence that Levy was in Puerto Rico with friends working on cars had never been proffered. Nonetheless, it was this evidence which was placed into the record on remand. Although we could not have foreseen that Levy would be allowed to proceed as he did on remand, *see United States v. Bell*, 988 F.2d 247, 250 (1st Cir.1993) (an appellate disposition of an appeal must be read by the district court "against the backdrop of prior proceedings in the case"); *United States v. Cornelius*, 968 F.2d 703, 706 (8th Cir.1992) (a limited remand does not automatically rejuvenate other issues in a case), we recognize that in some situations, the trial court may possess limited discretion to examine or re-examine issues or evidence outside of the four corners of the remand. *See Bell*, 988 F.2d at 250–51 ("even where, as here, an appellate court's mandate does not contemplate resurrecting an issue on remand, the trial court may still possess some limited discretion to reopen the issue in very special situations."). Thus, rather than ignoring this new alibi evidence and any findings thereupon as being outside the scope of the remand, we will assume that the trial court exercised its limited discretion to hear this portion of his current alibi as "newly discovered evidence." *See id.* at 251 (exercise of limited discretion to reopen issues on remand may be appropriate to hear significant new evidence not earlier obtainable in the exer-

cise of due diligence); *see generally,* 3 Charles Alan Wright, *Federal Practice and Procedure; Criminal 2d,* § 557 (2d ed.1982) (potentially exculpatory evidence not proffered at trial can be considered as newly discovered evidence under Fed.R.Crim.P. 33).

 A district court may only hear newly discovered evidence after the close of a criminal trial in order to determine whether the evidence is sufficient to warrant a new trial. *See* Fed. R. Crim P. 33. The standard for granting a new trial based upon newly discovered evidence is "that the evidence must be newly discovered, that it must be material to the issues, that it must be such as to have some effect on the outcome ... and that the failure to obtain the evidence not be due to a lack of diligence on the part of the defendant." *Vega Pelegrina v. United States,* 601 F.2d 18, 20–21 (1st Cir.1979).

Unfortunately for Levy, the new alibi evidence does not even approach this standard. Almost nine years after Levy was alleged to have off-loaded 5,000 pounds of marijuana, he presented evidence, in the form of the testimony of a few of his close friends, that he was working on cars all during the weekend in question. Despite the fact that the friends' memories were remarkably clear about many of the details of the weekend, this story never surfaced during the entire three-year period between his indictment, in March 1992, and the oral argument before this court in *Levy I.* Levy did not argue, and could never hope to argue persuasively, that this alibi could not have been obtained through the exercise of due diligence on his part, because the new evidence involved his own whereabouts during the weekend in question. A convicted criminal cannot successfully lay claim to a new trial when, years after his conviction, his friends suddenly provide a new alibi unsupported by anything other than their collective word. Thus, as a matter of law, Levy's new alibi evidence is insufficient to warrant a new trial and must be disregarded. The district court's finding that this new evidence is credible is insufficient, under these circumstances, to satisfy the rigorous requirements justifying a new trial.

## CONCLUSION

For the reasons discussed herein, the district court's original judgment is *affirmed.* We have also considered and rejected Levy's allegations of prosecutorial misconduct.