IN THE CASE OF


UNITED STATES, Appellee

v.


Anson D. BENTON, Specialist
U.S. Army, Appellant


No. 01-0289


Crim. App. No. 9800862

United States Court of Appeals for the Armed Forces

Argued October 24, 2001

Decided July 5, 2002

SULLIVAN, S.J., delivered the opinion of the Court, in which
GIERKE and BAKER, JJ., joined. CRAWFORD, C.J., filed an opinion
concurring in the result. EFFRON, J., filed a dissenting opinion.

<u>Counsel</u>

For Appellant: <u>Captain Terri J. Erisman</u> (argued); <u>Colonel Adele
H. Odegard</u>, <u>Lieutenant Colonel E. Allen Chandler, Jr.</u>, and
<u>Major Imogene M. Jamison</u> (on brief); <u>Major Scott R. Morris</u>,
<u>Major Jonathan F. Potter</u>, and <u>Captain Steven P. Haight</u>.



For Appellee: <u>Captain Janine P. Felsman</u> (argued); <u>Colonel Steven
T. Salata</u>, <u>Lieutenant Colonel Denise R. Lind</u>, and <u>Major
Margaret B. Baines</u> (on brief); <u>Captain Paul T. Cygnarowicz</u>.




Military Judges: Lawrence M. Cuculic, Debra L. Boudreau, and
Stephen V. Saynisch


<u>THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION</u>.

Senior Judge SULLIVAN delivered the opinion of the Court.

During the Spring of 1998, appellant was tried by a general court-martial composed of officer and enlisted members at Fort Lewis, Washington.  Contrary to his pleas, he was found guilty of kidnapping and forcibly sodomizing CM, in violation of Articles 134 and 125, Uniform Code of Military Justice, 10 USC §§ 934 and 925.  On June 19, 1998, he was sentenced to a bad-conduct discharge, confinement for two years and six months, total forfeitures, and reduction to pay grade E-1.  The convening authority approved this sentence on November 16, 1998.  The Army Court of Criminal Appeals affirmed on January 22, 2001.  54 MJ 717.

This Court on June 25, 2001, granted the following two issues for review:

> I.  WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED BY FINDING NO PREJUDICE TO APPELLANT, DESPITE FINDING THE MILITARY JUDGE ABUSED HIS DISCRETION IN REFUSING TO PERMIT THE DEFENSE TO ELICIT THE EXCULPATORY PORTIONS OF A GOVERNMENT INTRODUCED CONFESSION.
>
> II. WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED BY CONCLUDING THAT A CO-ACCUSED'S ADMISSION TO A CELLMATE THAT HE THREATENED APPELLANT WITH A GUN AT THE TIME OF THE OFFENSES WAS NEITHER AGAINST THE DECLARANT'S PENAL INTEREST NOR SUFFICIENTLY TRUSTWORTHY.

We hold that the military judge's refusal to admit hearsay evidence of appellant's out-of-court pretrial statement exculpating himself was harmless error.  See United States v. Levy-Cordero, 156 F.2d 244, 247 (1st Cir. 1998).  We further hold that the trial judge did not err when he refused to admit

additional hearsay testimony that appellant's co-accused

purportedly exonerated appellant of the charged offenses.  See

United States v. Seabolt, 958 F.2d 231, 233 (8th Cir. 1992).


The Court of Criminal Appeals, in a detailed opinion,

delineated the facts in this case and the evidence proffered by

the Government concerning appellant's liability for the

kidnapping and sodomy of CM.  It said:

> On the evening of 17 October 1997, the appellant and his alleged accomplice, Private First Class (PFC) Taori Ransom, spent several hours driving around in the vicinity of Lakewood, Washington, an area near Fort Lewis.  The appellant, who was driving PFC Ransom's car, stopped the car at PFC Ransom's direction near two young women, CM and her cousin, PFC Ruiz.  Much of CM's chilling account of her kidnapping, rape, and forcible sodomy by PFC Ransom that evening was unchallenged at trial, although the appellant vigorously contested his criminal liability for what transpired.  Some of the evidence surrounding the offenses of which the appellant was acquitted places the challenged evidentiary rulings in context and is thus included in our discussion of the facts.

> **A.   The Government's Case**

> CM and PFC Ruiz both testified that they were talking outside the home of PFC Ruiz' boyfriend when they heard a car pull up. They saw a man leave the car and walk toward them, brandishing a 9 mm semi-automatic pistol.  He grabbed CM's hair and dragged her, screaming and struggling, into his car.  When PFC Ruiz attempted to aid her cousin, the man struck PFC Ruiz across the forehead with the pistol.  The appellant then drove off with the man in the back seat with CM.

> According to CM, once she was in the car, the man, later identified as PFC

Ransom, pointed his gun at her and told her to undress and then ordered her to perform oral sodomy upon him.  CM did so. He thereafter climbed on top of her and raped her.  While PFC Ransom was sexually assaulting her, she saw the appellant look back and grin or smile at her.  When the car stopped at a dead end in a wooded area, the appellant announced that it was "his turn."

CM testified that PFC Ransom pulled her by her hair through a barbed wire fence and led her into the woods, and the appellant followed them.  She did not see the gun after they left the car, but was fearful that PFC Ransom was still armed. Private First Class Ransom ordered her to get on her knees to perform oral sodomy on the appellant, who had already removed his erect penis from his pants.  She complied, placing her mouth on his penis.  The appellant thereafter left the area to move the car and did not return.

Meanwhile, local police were looking for the appellant, PFC Ransom, and CM.  Based on descriptions provided by PFC Ruiz and additional assistance from her boyfriend, the police stopped the appellant while he was driving PFC Ransom's car along an interstate highway several miles from the scene of the abduction.  The appellant was the only occupant, and, just before he emerged from the car, the arresting officers observed him reach down under the front of the driver's seat.  A later search of the vehicle disclosed a 9 mm semi-automatic pistol under the driver's seat and clothes (jeans, sweater, and underwear) belonging to CM in the back and front seats.

When questioned by one of the arresting officers, the appellant first claimed that he had borrowed the car from a friend and was taking some other friends to a club in Seattle.  He then stated that he had dropped the friends off at Fort Lewis and was going on to the club by himself, but could not explain why.  He made no mention of CM's abduction.

4

In a taped statement made to police detectives in the early morning hours of 18 October, the appellant admitted that he and PFC Ransom had been driving around in the early evening of 17 October. In the statement, the appellant asserted that as they neared the appellant's house, PFC Ransom told him to stop. He did not know what PFC Ransom was doing until he heard "the scream and holler." He saw CM forced into the car, and then PFC Ransom told him to drive. He said that he did as he was told, stopping the car in a wooded area and entering the woods with PFC Ransom and CM. He indicated that PFC Ransom told CM to "give me [the appellant] some" but denied that CM actually performed oral sex on him. He stated that CM grabbed his genitals through his clothing. The appellant then returned to the car because he was scared. The tape of this interrogation was played for the court members, and a transcript was introduced as a prosecution exhibit.

54 MJ at 719-20 (footnote omitted).

The Court of Criminal Appeals then fully delineated the proffered defense evidence, which was rejected by the military judge.

## B. The Testimony of Private New

The challenged evidentiary rulings stemmed from the testimony of Private (PV2) New, a pretrial confinee at the regional confinement facility where the appellant and PFC Ransom were also being held in pretrial confinement. Testifying under a grant of leniency,[2/] PV2 New recounted certain statements that the appellant made while they were cellmates.

Private New's testimony on direct examination tracked fairly closely with the appellant's taped statement to the local police. According to PV2 New, the appellant said that he and PFC Ransom had been driving around for some time when PFC Ransom told the appellant to stop near two women, and that the appellant had no idea

that PFC Ransom was going to abduct one of them until PFC Ransom dragged CM into the car.

Private New recounted the appellant's observations of PFC Ransom sodomizing and raping CM in the back seat of the car while the appellant drove around. He testified that the appellant described stopping the car in a wooded area, and that PFC Ransom directed CM to perform oral sodomy on the appellant. The appellant told PV2 New that he left the area before any sodomy occurred.

On cross-examination, the defense counsel challenged PV2 New's credibility by exploring the grant of leniency, PV2 New's Canadian conviction for vehicular homicide, his stint in an Arkansas mental hospital as the result of a suicide attempt, his false claims to medical authorities that he was a Special Forces sergeant, and his possible access to transcripts of the appellant's and PFC Ransom's Article 32, UCMJ, hearings while he was their cellmate.

Switching tactics, the defense then sought to elicit additional statements that the appellant made to PV2 New. Specifically, the defense asked PV2 New if the appellant also stated that, at the time of the kidnapping, PFC Ransom pointed a gun at him in the car and ordered him to drive. The military judge sustained a hearsay objection to this testimony, although the defense counsel argued that the "rule of completeness" made the additional statements admissible. This ruling and the military judge's response to subsequent attempts to introduce the same evidence form the basis for the appellant's first assignment of error.

Later in the cross-examination, the defense counsel asked PV2 New if, during a separate conversation with PFC Ransom, PFC Ransom admitted pointing a gun at the appellant. The military judge again sustained a hearsay objection, with comments suggesting that he considered this as the same question the defense had asked earlier. The defense counsel

6

pointed out that he was trying to elicit statements of PFC Ransom to PV2 New, not statements of the appellant to PV2 New, and that the penal interest exception to the hearsay rule applied. In an Article 39(a), UCMJ, session, the defense made a more complete proffer of the out-of-court statement of PFC Ransom that he intended to elicit, but the military judge sustained the prosecution's hearsay objection. This ruling is the basis of the appellant's second assignment of error.

At the conclusion of the government's case, the defense counsel asked the military judge to reconsider his rulings on the admissibility of the statements that the appellant and PFC Ransom had made to PV2 New. As a proffer of what PV2 New would say, the defense asked that PV2 New's sworn statement, previously marked as a defense exhibit but not admitted, be made an appellate exhibit. The military judge indicated that remarking the statement was not necessary, and adhered to his earlier rulings.

_____

[2/] Private New disclosed that he was facing trial by court-martial himself for manslaughter, absence without leave, and other military offenses. Canadian authorities had already tried him for dangerous driving that had caused the death of his best friend, another soldier. The military manslaughter charge apparently involved the same death. In exchange for delaying his own trial until he testified against the appellant and PFC Ransom, the grant of leniency involved dropping the manslaughter charge and limiting any sentence on the other offenses to time served in pretrial confinement.

Id. at 720-21 (emphasis added).

Finally, the appellate court below delineated the remainder of the defense evidence at this court-martial.

## C.  The Appellant's Testimony

The appellant testified on the merits, and in general, his testimony was consistent with his pretrial statement to the police.  He testified that he and PFC Ransom were riding around and listening to music, as they had done many times before.  Because PFC Ransom liked to drink (and had drunk to the point of vomiting earlier that evening), the appellant was driving PFC Ransom's car.  Although the appellant had consumed some beer himself, he testified that he was not drunk.  He indicated that on previous occasions when he and PFC Ransom had gone out, PFC Ransom flirted with women he met.

The appellant testified that he was driving in the general area of his home when PFC Ransom told him to stop near two young women and then left the car.  The appellant was collecting his compact disks from the floor of the car and did not hear or see what went on after he stopped the car.  When he looked up again, CM was climbing into the car's rear seat with PFC Ransom, apparently willingly.  The appellant denied hearing any screaming or crying, but on cross-examination, admitted that he heard some screaming and yelling when the back door was opened.

In details not included in his taped or oral statements to the police, the appellant testified that after PFC Ransom entered the car, PFC Ransom put a gun to the appellant's face and ordered him to drive away.  He was scared because PFC Ransom was drunk, so he complied.  While driving, the appellant looked into the back seat and saw PFC Ransom on top of CM.  He began hitting PFC Ransom in the side repeatedly with his fist in an effort to get his attention.

The appellant testified that he stopped the car at a dead end in a wooded area pursuant to PFC Ransom's instructions.  He exited the car with PFC Ransom and CM.  He initially denied noticing that CM was nearly naked, but admitted during recross-examination that she was naked from the

waist down when they went through the barbed wire fence into the woods. He again denied that CM performed oral sodomy on him. He testified that when PFC Ransom told CM to perform oral sodomy on him, the appellant gave PFC Ransom "a look," and PFC Ransom responded by telling him to move the car. The appellant then left the area because he did not want to have anything to do with what he expected was going to happen; that PFC Ransom was going to rape CM. When he got back to the car, he drove off, leaving CM and PFC Ransom in the woods.

The appellant testified that after being stopped, he lied to the police officers about being on his way to a club in Seattle because things "looked bad" for him.

Based on the appellant's testimony that he was in fear of PFC Ransom because PFC Ransom was drunk and had pointed a weapon at his head in the car, the military judge instructed the court members on the defense of duress with regard to both offenses of which the appellant was convicted.

Id. at 721-22 (emphasis added).

___ ___ ___

Appellant makes two claims of evidentiary error in his case. First, he contends that the military judge erred when he suppressed testimony from a fellow pretrial confinee, PV2 New, that appellant had said that his co-accused, PFC Ransom, pointed a gun at him and ordered him to drive at the time of the alleged kidnapping of CM. See generally Mil.R.Evid. 304(h)(2), Manual for Courts-Martial, United States (1998 ed.).[1]

---

[1] All Manual provisions are identical to the ones in effect at the time of appellant's court-martial.

9

Second, he asserts that the military judge erred when he excluded proffered testimony, again from PV2 New, that PFC Ransom also said that he pointed a gun at appellant at that time, probably because he was drunk. (R. 423)  See generally Mil.R.Evid. 804 (b)(3).  On the basis of these evidentiary errors, appellant asserts the "it can hardly be argued that [he] received the fair trial to which he was entitled."  Final Brief at 24.

Appellant's evidentiary claims arose in the context of a contested trial, where he was ultimately found guilty of kidnapping and sodomizing CM.  He testified in his own defense to the kidnapping charge that his alleged co-actor, PFC Ransom, coerced him into committing this crime by threatening him with a gun.  See RCM 916(h), Manual, supra.  He also testified in defense to the sodomy charge that he refused to commit that offense, although PFC Ransom tried to force him to do this act.  The alleged victim, however, testified that appellant was a willing participant in committing the charged offenses and that she did not see PFC Ransom threaten appellant with a gun at any time.  PFC Ransom did not testify at appellant's trial.  An arresting officer and the investigating detective testified that appellant gave different exculpatory stories, neither one mentioning that he was threatened with a gun by PFC Ransom.  The Government finally called PV2 New, a fellow pretrial confinee of appellant and PFC Ransom, to testify to various admissions made by them prior to trial.  The defense sought the excluded

testimony on PFC Ransom's purported threat on cross-examination of PV2 New.

I

Appellant asserts that PV2 New's proffered testimony that appellant said he was threatened by PFC Ransom at the time of the kidnapping was admissible under Mil.R.Evid. 304(h)(2). 2  He asserts that this exculpatory statement was part of his purported confession, otherwise evidenced on direct examination by the Government's witness, PV2 New.  The appellate court below held that the trial judge erred in excluding this testimony, but it was harmless.  It conducted a detailed analysis of this purported error in the context of appellant's court-martial and said:

> Had the appellant's statement to PV2 New been admitted, we are confident that the credibility assessment would still have heavily favored CM's recitation of events. Having no "grave doubts" about the impact of the excluded evidence on the results obtained at trial, we conclude that the appellant suffered no material prejudice from the erroneous exclusion of PV2 New's testimony.  See UCMJ art. 59(a), 10 USC § 859(a); United States v. Pollard, 38 MJ 41, 52 (CMA 1993) (quoting Kotteakos v. United States, 328 U.S. 750, 765 . . . (1946)).

54 MJ at 725.

We agree with the appellate court below for several reasons. First, appellant himself was allowed to testify that his

---

2  It states:  "Completeness.  If only part of an alleged admission or confession is introduced against the accused, the defense, by cross-examination or otherwise, may introduce the remaining portions of the statement."

United States v. Benton, 01-0289/AR

participation in CM's kidnapping was coerced by PFC Ransom's
threatening conduct with a gun and that he did not sodomize her.
See United States v. Scheffer, 523 U.S. 303 (1998) (holding no
violation of constitutional right of defense where accused
allowed to substantially present his defense through other
evidence); United States v. Lea, 249 F.3d 632, 642 n.8 (7th Cir.
2001).  Second, the corroborative value of the excluded evidence
that appellant told a fellow pretrial confinee sometime after the
crime the same exculpatory story was not great.  See generally
United States v. Mathis, 264 F.3d 321, 342-44 (3rd Cir. 2001) (in
context of record as a whole, excluded testimony was highly
unlikely to have caused a different result).  Finally, any
corrective value which the excluded evidence might have had to
prevent the members from thinking appellant had confessed to PV2
New was largely minimized by appellant's own testimony in this
case. 3

     On this last point, we note the telling words of the
appellate court below:

> More significantly, during direct
> examination, the appellant denied having
> the conversation in question with PV2 New.
> He suggested that PV2 New's knowledge of
> the events to which he testified derived
> from reading the transcript of the Article
> 32(b), UCMJ, investigation that the
> appellant kept in his cell.  By denying

---

3   We reject the dissent's additional assertion that the
military judge's ruling excluding evidence of the remainder of
appellant's statement to PV2 New  prejudicially undercut
appellant's trial testimony by showing it to be a recent
fabrication.  The admission of appellant's pretrial statements to
his arresting officer and, later, to an investigating detective
amply demonstrated that fact.

> that the conversation to which PV2 New testified actually occurred, the appellant impaled himself on the horns of a dilemma: on the one hand arguing that his statements to PV2 New were admissible under the rule of completeness and on the other hand arguing that there were no statements to complete.  He is now in no position to claim that he was gored.

54 MJ at 725 (emphasis added);  see United States v. Levy-Cordero, 156 F.3d at 247 (holding that the erroneous exclusion of evidence of facts which accused recanted certainly was harmless error).  We agree.


II

The second issue in this case is whether the Court of Criminal Appeals prejudicially erred when it affirmed the military judge's refusal to admit additional testimony from PV2 New which purportedly exculpated appellant.  In particular, appellant asserts that the military judge erroneously prohibited the defense from asking PV2 New whether PFC Ransom, admitted that he pointed a gun at appellant during the incident with CM.  (R. 420, 423)  The record reflects that PV2 New would have testified that he asked PFC Ransom,"Why'd you pull a gun at your boy?" and he (Ransom) responded, "I don't know.  I guess because I was drunk or something."  (R. 426)

Defense counsel asserted at trial that PV2 New's testimony concerning PFC Ransom's out-of-court statement was admissible hearsay under Mil.R.Evid. 804(b)(3), the declaration-against-interest exception to the hearsay rule.  (R. 422, 534-36)  See generally Williamson v. United States, 512 U.S. 594 (1994).  The

military judge sustained the Government's objection to this proffered defense evidence as hearsay, suggesting he considered it untrustworthy. (R. 427)  He was also asked at a later date to reconsider his ruling and make specific findings of fact pertaining to this motion, which he indicated he would do, but which he failed to do. (R. 536)  The Court of Criminal Appeals held that the proffered evidence did not qualify as a declaration against penal interest.  54 MJ at 727.

Mil.R.Evid. 804(b)(3) states:

> (b)  Hearsay Exceptions.  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.
>
> * * *
>
> (3)  Statement against interest.  A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the position of the declarant would not have make the statement unless the person believed it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

(Emphasis added.)

To gain admission of PV2 New's exculpatory hearsay testimony under this rule, it was appellant's burden to show, inter alia, that (1) PFC Ransom was unavailable to testify at trial, (2) PFC

14

Ransom's statement was against his penal interest, and (3) corroborating circumstances clearly indicated the trustworthiness of the statement. See United States v. Paguio, 114 F.3d 928, 932 (9th Cir. 1997); United States v. Bumpass, 60 F.3d 1099, 1102 (4th Cir. 1995).

The Court of Criminal Appeals held, inter alia, that appellant failed to show PFC Ransom's out-of-court statement was actually against his penal interests. (Requirement 2)  See generally United States v. Tropeano, 252 F.3d 653, 659 (2<sup>d</sup> Cir. 2001) (recognizing a "sufficiently self-inculpatory" standard for determining whether out-of-court statements qualify as declarations against penal interest).  In this regard, we note that PFC Ransom's statement was evasive on its face and fell far short of an unambiguous admission to coercing appellant to commit a crime by pointing a gun at him.  See United States v. Seabolt, 958 F.2d at 233; cf. United States v. Thomas, 571 F.2d 285, 288 (5th Cir. 1978) (direct confession not required, only disserving statements which would have probative value against declarant).

Moreover, to the extent he did so implicitly, he attempted to diminish his culpability by blaming his conduct on overindulgence in alcohol.  See generally RCM 916(l)(2) (evidence of voluntary intoxication may be introduced to disprove specific intent offenses); see also United States v. Jacobs, 44 MJ 301, 306 (1996); United States v. Fowlie, 24 F.3d 1059, 1068 (9th Cir. 1994) (statement not against interest where it indicates that declarant thinks he would not be prosecuted for admissions).  We conclude that the appellate court below did

not err in holding that PV2 Ransom's statement did not sufficiently expose him to criminal liability to the extent that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. Williamson v. United States, 512 U.S. at 603-04.

Assuming error in this regard, we next turn to the question of trustworthiness under Mil.R.Evid. 804(b)(3). (Requirement 3) A preliminary decision must be made by the military judge whether there exist "corroborating circumstances which clearly indicate the trustworthiness" of the out-of-court statement. United States v. Price, 134 F.3d 340, 347-48 (6th Cir. 1998)(emphasis added). In United States v. Rasmussen, 790 F.2d 55, 56 (8th Cir. 1986), the Eighth Circuit delineated several circumstances which bear on this question:

> The trustworthiness of a statement against the declarant's penal interest is determined by analysis of two elements: "the probable veracity of the in-court witness, and the reliability of the out-of-court declarant." Alvarez, supra, 584 F.2d at 701. Factors to be considered in such an analysis include: (1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, (2) the general character of the speaker, (3) whether other people heard the out-of-court statement, (4) whether the statement was made spontaneously, (5) the timing of the declaration and the relationship between the speaker and the witness. Id. at 702 n.10.

The record before us in this case established several circumstances relevant to this trustworthiness question. See

United States v. Bumpass, 60 F.3d at 1102.  First, PFC Ransom, the out-of-court declarant, had a motive for misrepresentation in this matter.  PV2 New's pretrial statement (Defense Exhibit A for ID), which was before the military judge, asserts that "Benton said he was going to testify against Ransom if Ransom wouldn't sign a paper saying Benton didn't do anything." (R. 417-18)  See United States v. Bumpass, 60 F.3d at 1103.  Second, in view of the numerous serious offenses charged against PFC Ransom concerning CM, there was a low probability PFC Ransom would ever be additionally charged or punished for aggravated assault on his co-accused or perjury.  See United States v. Silverstein, 732 F.2d 1338, 1346 (7th Cir. 1984).  Third, nobody else heard the statement purportedly made by PFC Ransom to PV2 New, a fellow pretrial confinee, and it was made in circumstances suggesting that it was mere jailhouse braggadocio.  See United States v. Sanchez-Satelo, 8 F.3d 202, 213 (5th Cir. 1993); United States v. Seabolt, 958 F.2d at 233; cf. United States v. Hamilton, 19 F.3d 350, 357 (7th Cir. 1994).  Finally, the purported statement was not made spontaneously, but in response to a specific question asked by a fellow pretrial confinee, who had previously discussed this case in great detail with the subsequently exonerated co-accused.  Cf. United States v. Thomas, 571 F.2d 285, 290 (5th Cir. 1978).

Appellant had a heavy burden to establish corroborating circumstances clearly indicating the trustworthiness of PFC Ransom's out-of-court statement.  See United States v. Bumpass,

17

United States v. Benton, 01-0289/AR

supra.  The record before us, however, overwhelmingly supports the conclusion of the judge that such circumstances did not exist in this case.  Cf. United States v. Paguio, 114 F.3d at 933 (where evidence cuts both ways on trustworthiness, statement should be admitted for the jurors' determination).  Instead, the circumstances in this case clearly show the exact type of evidence that Mil.R.Evid. 804(b)(3) was designed to preclude. See United States v. Silverstein, supra (the rule was designed to circumvent fabrication by the defendant's pals where there was little chance that the pals would be prosecuted).

The decision of the United States Army Court of Criminal Appeals is affirmed.

CRAWFORD, Chief Judge (concurring in the result):

Appellant seeks to overturn his conviction in this case by claiming that the military judge erred in failing to admit two statements by a pretrial confinee, PV2 New, that could have been employed to exonerate appellant. First, appellant told PV2 New that PFC Ransom pointed a gun at appellant; and second, Ransom told New that Ransom pointed a gun at appellant. Both Ransom and appellant were charged with numerous offenses, and appellant was convicted of forcible sodomy and kidnapping of the victim.

Statements may be admitted under Mil. R. Evid. 804(b)(3), Manual for Courts-Martial, United States (2000 ed.), to exonerate the defendant or implicate the defendant. Rule 804(b)(3) demands corroboration only when the defense offers an exonerating declaration against interest. There is no requirement for corroboration when the prosecution seeks to admit statements implicating the defendant. I would hold that any error in this case is harmless and leave for another day the constitutionality of Rule 804(b)(3).

The victim testified that appellant turned and looked at her several times while she was being raped. The contention that appellant was driving the car while Ransom, over an extended period of time, was raping the victim, and at the same time forcing appellant to drive the car, strains credulity. New's testimony that appellant said Ransom pointed a gun at him

United States v. Benton, No 01-0289/AR

was specifically denied by appellant during the trial.

Likewise, Ransom's statement that he pointed a gun at appellant

is unclear and ambiguous.  Additionally, as the majority

indicates, Ransom's statement did not reasonably expose him to

any more criminal liability than he already faced. Because the

defense failed to establish the trustworthiness of Ransom's

statement, the judge did not abuse his discretion in excluding

it.

United States v. Benton, No. 01-0289/AR

EFFRON, Judge (dissenting):

I agree with the majority opinion that the military judge erred in excluding the exculpatory portions of Private (PV2) New's testimony about appellant's admissions. I respectfully dissent, however, from the majority opinion's conclusion that the error was harmless.

I.  THE PRETRIAL STATEMENT AND EVIDENCE OF DURESS

Appellant was charged with participating with Private First Class (PFC) Taori Ransom in a variety of crimes against Ms. CM, including rape, kidnapping, and forcible sodomy. Appellant and PFC Ransom were placed in pretrial confinement, where they met PV2 New. Prior to appellant's trial, PV2 New informed law enforcement personnel that he and appellant had discussed the charges against appellant. PV2 New provided a sworn, written statement relating his conversation with appellant, which includes the following:

> Benton told me that he and Ransom were driving around when they saw two girls in Woodbrook and they were going to "mack on them." I understood "mack" to mean sex or something.... Ransom got out of the car, and Benton said he saw Ransom hit one of the females on the head with a gun. Ransom then pushed the girl in the car. Benton said Ransom put the gun to his (Benton's) head and said "drive, drive, go," or words to that effect.

Benton said he pulled over to the side of the road; Ransom did not tell him to stop. Benton said he pulled into a dead end and turned the car around. According to Benton all three people…got out of the car. Ransom told the girl to "hook my boy up," or words to that effect. Benton told me that the female victim began to undo his (Benton's) pants and was going to perform oral sex on him, then he changed his mind and pulled his pants up.

According to New, Benton also told him he saw Ransom have oral sex, sexual intercourse, and anal sex with the victim.

## II. THE INCOMPLETE STATEMENT AND MISLEADING PRESENTATION OF THE PRETRIAL STATEMENT AT TRIAL

At trial, PV2 New testified as a witness for the prosecution. The prosecution used New's testimony to introduce appellant's out-of-court statements as evidence of appellant's participation in the charged offenses. During the direct examination, the prosecution elicited the substance of New's entire pretrial statement regarding his discussion with appellant, with one major exception. Trial counsel carefully avoided any questions about New's pretrial assertion that, according to his conversation with appellant, Ransom had placed a gun to appellant's head when Ransom returned to the car with Ms. CM. Despite omitting that critical element of his pretrial statement, PV2 New told the court-martial that appellant had told him "everything" about the incident.

2

On cross-examination, defense counsel sought to elicit that portion of New's pretrial statement describing Ransom placing a gun to appellant's head. Trial counsel objected, asserting that the question called for inadmissible hearsay. Defense counsel countered that the statement was admissible under the rule of completeness. The military judge sustained the objection and precluded the testimony.

Appellant subsequently testified. The critical point of his testimony was that he was coerced into committing the offenses as a result of Ransom placing a gun to his head. He also denied that he had made any statement to PV2 New. In light of appellant's testimony that he was coerced by Ransom placing a gun at his head, the military judge instructed the members on the defense of duress. See RCM 916(h), Manual for Courts-Martial, United States (1998 ed.).

The members returned a mixed verdict, convicting appellant of several offenses and acquitting him of several offenses. On direct review, the Court of Criminal Appeals held that the military judge erred by precluding New from testifying as to that portion of his statement recounting appellant's description of Ransom placing a gun to his head. The court, however, concluded that the error was harmless, a view that has been adopted in the majority opinion.

### III. THE PREJUDICIAL IMPACT OF THE MILITARY JUDGE'S ERRONEOUS RULING

The majority opinion offers three grounds in support of the proposition that the error was harmless.  First, the majority opinion contends that the error was harmless because appellant was allowed to present his defense -- duress -- through other evidence.  The purpose of the rule of completeness, however, goes beyond allowing an accused to introduce exculpatory statements.  The purpose is to ensure that the factfinders are not misled as to the nature and quality of the accused's statement.  Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 171-72 n.14 (1988)

In the present case, the members were misled.  The problem with PV2 New's in-court testimony is that it created the erroneous impression that appellant had told New "everything" about the incident -- and that "everything" amounted to an unqualified, inculpatory statement.  In that form, New's testimony undercut appellant's in-court testimony by making appellant's in-court statement regarding duress appear to be a recent fabrication.

The essence of the defense contention on appeal is not that New's complete testimony was needed to establish the defense of duress.  The issue raised by the defense is that the incomplete nature of New's testimony contradicted appellant's in-court

4

testimony.  As the Supreme Court has emphasized, the rule of completeness is designed to ensure "that the court not be misled because portions of a statement are taken out of context" and to avoid "the danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material." Id.

The majority opinion also contends that the error was harmless because there was not much corroborative value in the fact that appellant's in-court testimony was the same as the statement he made to another person in confinement shortly after the crime.  The critical problem, as noted above, was not the absence of corroborative testimony.  The problem was that appellant's in-court testimony was undercut by the glaring difference between his testimony at trial -- raising the defense of duress -- and New's selective testimony about appellant's pretrial statement  -- leaving the impression that there was no such coercion.

The majority opinion further contends that the error was harmless because when appellant denied making any statement to New, his position "largely minimized" any value of the excluded testimony. __ MJ at (12).  The majority opinion suggests that appellant created a "dilemma" by arguing both that the evidence was needed to complete his statement to New and that he made no such statement.  The problem in this case was not created by the

5

defense, but by the prosecution's misleading and incomplete account of the pretrial statement.

This is not a case of the defense affirmatively seeking to introduce an exculpatory pretrial statement into the trial as part of the defense case-in-chief. New's testimony was interjected into the trial by the prosecution, not the defense. The decision to present New's recollection in a selective rather than a comprehensive manner was made by the prosecution, not the defense. The ruling of the military judge was prejudicial to appellant's right to have the members assess the credibility of appellant's duress. The ruling allowed the prosecution to present an incomplete, misleading account of appellant's pretrial statement, an account which left the impression that appellant had changed his story prior to trial.

It is also noteworthy that the prosecution's presentation was far from compelling, as evidenced by the fact that the panel members did not accept the prosecution's primary theory of the case. The prosecution's theory was that appellant and Ransom planned and executed the attack on CM. The members, however, acquitted appellant of all the specifications involving vicarious liability for the acts of PFC Ransom, as well as the specification involving conspiracy. He was convicted only of the offenses to which the duress defense was most directly applicable -- kidnapping and forcible sodomy.

6

The ruling of the military judge meant that the evidence which the members took into the deliberation room consisted of conflicting testimony between the victim and appellant, and what appeared to be a complete and unqualified pretrial confession by appellant to his cellmate.  The members were left with the impression that appellant had never told anyone prior to trial that PFC Ransom had pointed the gun at him.  The members easily could have concluded that appellant concocted this story in preparation for trial in order to create a defense.  Under these circumstances, the error was prejudicial.