# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39374**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Benjamin L. Hann**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 8 April 2019

————————————

*Military Judge:* John C. Harwood (arraignment), Donald R. Eller, Jr. (trial).

*Approved sentence:* Bad-conduct discharge, confinement for 4 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 5 May 2017 by GCM convened at Ramstein Air Base, Germany.

*For Appellant:* Major Todd M. Swensen, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges.*

Judge DENNIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

DENNIS, Judge:

Appellant was convicted, in accordance with his pleas, of two specifications of dereliction of duty, one specification of false official statement, and

one specification of obstruction of justice in violation of Articles 92, 107, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 934. Contrary to his pleas, Appellant was also convicted of one specification of negligent homicide in violation of Article 134, UCMJ.[1] A panel of officer members sentenced Appellant to a bad-conduct discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

At the core of this case is the tragic death of SSgt SD, who was riding on his bicycle when Appellant's vehicle struck and killed him on a road near Ramstein Air Base, Germany. Appellant does not contest that he caused SSgt SD's death but contests the extent of his culpability. Appellant raises three issues on appeal: (1) whether the military judge abused his discretion by not admitting under Military Rule of Evidence 803 a statement made by Appellant; (2) whether Appellant's conviction for negligent homicide was factually and legally sufficient; and (3) whether an 80-day violation of the 120-day post-trial processing standard from the completion of trial to action warrants relief pursuant to *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). We find no prejudicial error and affirm.

## I. BACKGROUND

On 26 March 2016, Appellant and several other Airmen left Ramstein Air Base and headed to a nearby restaurant for dinner. The Airmen rode in two separate vehicles. Appellant was driving the first vehicle with Airman First Class (A1C) JB as his only passenger. Senior Airman (SrA) DC was driving the second vehicle with three other Airmen as his passengers.

The distance from the base to the restaurant was short. To get there, the Airmen took two local highways, including one known as K-25, which contained only two lanes, one per direction of traffic. Appellant's designated lane was on the right side of the road, but he used the opposing lane to pass other vehicles, sometimes two or three at a time, that were traveling at slower rates of speed. Appellant returned to his designated lane when the pass was complete. SrA DC, who was following closely behind Appellant, completed each pass just as Appellant did. The K-25 highway contained various speed limits ranging from 50 kilometers per hour (or approximately 31 miles per hour) to 100 kilometers per hour (or approximately 62 miles per hour). All of

---

[1] Appellant was acquitted of one specification of reckless operation of a vehicle and one specification of involuntary manslaughter in violation of Articles 111 and 119, UCMJ, 10 U.S.C. §§ 911, 919.

the Airmen reported traveling "fast" but varied in their estimations of the speed the cars were traveling. Their estimations ranged from 40 to 60 miles per hour.

At one point, Appellant, who was driving a Ford Mustang, attempted to pass a sport utility vehicle (SUV) just before a blind right-hand curve on K-25. The manner in which Appellant completed this pass was the crux of the dispute at Appellant's trial. What was not in dispute was that when Appellant saw SSgt SD riding his bicycle towards Appellant, Appellant's Mustang almost immediately struck the bicycle, causing SSgt SD to hit the driver's side of Appellant's windshield, fly through the air, and land in a ditch against a fence just outside an ammunition depot. The ammunition depot gate guard saw Appellant's car drive past the gate and noticed that it was "definitely faster" than the other vehicles on the road. The gate guard did not see the collision, but he heard the impact, saw SSgt SD's body fly through the air, and rushed out of the gate to assist SSgt SD. Appellant and SrA DC both stopped their vehicles and also rushed to SSgt SD's aid.

By all accounts, Appellant became frantic after the collision. He began crying, yelled for someone to call emergency services, and even pleaded with two of his fellow Airmen to "take the fall" for the collision because Appellant "had a family and a kid." By the time emergency services arrived, SSgt SD had no pulse. SSgt SD was later pronounced dead due to the multiple injuries he sustained when he was struck by Appellant's car.

## II. DISCUSSION

### A. Exclusion of Evidence

Appellant asserts that the military judge abused his discretion by excluding a statement Appellant purportedly made about whether SSgt SD was in Appellant's lane just before the collision. We find that the military judge did not abuse his discretion.

#### 1. Additional Background

A1C JB, Appellant's passenger, testified during his direct examination that, as they were passing the SUV, Appellant made a statement to "make the presence of the biker known." Although A1C JB could not recall Appellant's exact words, he said that "[i]t was something to the effect, like, 'Look at this guy' or like, 'F[**]king biker' or something." During the cross-examination of A1C JB, trial defense counsel attempted to elicit a different statement Appellant purportedly made to A1C JB. Specifically, trial defense counsel sought to admit evidence that Appellant told A1C JB the bicyclist was in Appellant's lane just before the collision. When trial counsel objected to the evidence as impermissible hearsay, trial defense counsel responded

that the evidence was not being offered for its truth and engaged in the following colloquy with the military judge:

> DC: Sir, essentially, it's our theory that: Yes, there was a statement made about the location, the presence of the biker in the road, but that [A1C JB] is confused about as to when that statement was made, whether it was made in the car prior to the impact or whether it was made during this discussion afterwards.

> MJ: Do you want to call him back in and ask him those questions? I am not going to let you testify. I appreciate your theory. I appreciate theme or where you might want to go, but right now, there's a hearsay objection. The hearsay objection has to do with your client's statements or comments to the witness, on the road, outside of the car. So, help me understand how you overcome a hearsay objection?

> DC: Essentially, sir, we are saying that that statement has already been offered through the government. What were [sic] simply trying to elicit through him is the matter of the timing; and the fact that there is the possibility that he is confused as to when that statement is made.

> MJ: Well, how about this: How about if you ask [A1C JB] that statement. "[A1C JB], Airman Hann made some other comments to you on the road, correct?" No substance. "Is it possible you are confused, that he made a statement about the biker, either in the car or while you are on the street or while you were standing next to the body[?]" That's the cross-examination, isn't it?

When the military judge again invited trial defense counsel to offer an exception to the hearsay rule, trial defense counsel asserted that the testimony would be admissible under "the rule of completeness." *See* Mil. R. Evid. 106. The military judge sustained trial counsel's objection.

### 2. Law and Analysis

#### *a. Standard of Review*

As a threshold matter, we first address the dispute regarding the appropriate standard of review. Appellant asserts that we should review the military judge's ruling for an abuse of discretion while the Government asserts that the appropriate standard of review is plain error. In light of *United*

*States v. Palmer*, 55 M.J. 205, 207–08 (C.A.A.F. 2001), we review the military judge's ruling for an abuse of discretion.

The appropriate standard by which we review evidentiary rulings tends to center on one question: whether an issue was properly preserved at trial. When a military judge's ruling excludes evidence, Military Rule of Evidence 103(a)(2) requires a party to make the substance of the evidence known to the military judge "by an offer of proof, unless the substance was apparent from the context." Here, the Defense attempted to offer Appellant's statement at trial, but did so using entirely different theories of admissibility than Appellant now offers on appeal. At trial, Appellant first asserted that the statement was not being offered for its truth and later asserted that the statement was admissible under the "rule of completeness." On appeal, Appellant asserts that the statement fell under two exceptions to the hearsay rule: present sense impression under Military Rule of Evidence 803(1) and excited utterance under Military Rule of Evidence 803(2). "[I]f evidence is excluded at trial because it is inadmissible for the purpose articulated by its proponent, the proponent cannot challenge the ruling on appeal on the ground that the evidence could have been admitted for another purpose." *Palmer*, 55 M.J. at 207–08 (citing *United States v. Hudson*, 970 F.2d 948, 957 (1st Cir. 1992)).

In *Palmer*, the United States Court of Appeals for the Armed Forces (CAAF) addressed a similar issue involving whether the defense counsel had adequately preserved for appeal its objection to the military judge's exclusion of evidence. The Army Court of Criminal Appeals reviewed the military judge's ruling for plain error. The CAAF reviewed the military judge's ruling for an abuse of discretion but found that, "[b]ecause of defense counsel's vague and misdirected proffer, we hold that the military judge did not abuse his discretion by sustaining the Government's objection to the evidence." *Palmer*, 55 M.J. at 208 (citing *Means*, 24 M.J. at 163).[2] In light of *Palmer*, we review the military judge's ruling for an abuse of discretion.

### b. Admissibility of Hearsay Statements

As the CAAF did in *Palmer*, we consider two factors in analyzing whether the military judge abused his discretion. The first is whether Appellant properly brought the issue to the military judge's attention. The second is whether the evidence falls under one of the exceptions to the hearsay rule.

---

[2] In *Palmer*, the CAAF granted review on "[w]hether the United States Army Court of Criminal Appeals erred in ruling that [the] appellant had failed to establish that the military judge committed plain error . . . ." 55 M.J. at 206. The CAAF did not address whether it was error to apply the plain error standard.

There can be no argument that Appellant failed to bring the exceptions he now relies on to the military judge's attention. When the military judge repeatedly attempted to determine whether a hearsay exception applied, trial defense counsel offered none. Trial defense counsel also failed to establish specifically when or how Appellant made the statement that the Defense was seeking to have admitted. Without this evidence, the military judge was not required to apply the present sense impression or excited utterance exception to hearsay. "Military judges are not expected to be clairvoyant. When the basis for admissibility is not obvious, 'an offer of proof is required to clearly and specifically identify the evidence sought to be admitted and its significance.'" *Palmer*, 55 M.J. at 207 (citing *United States v. Means*, 24 M.J. 160, 162–63 (C.M.A. 1987)).

The Military Rules of Evidence provide several exceptions to the rule prohibiting the use of hearsay statements during in-court testimony. As previously mentioned, Appellant now asserts that two of these exceptions applied in his case: the present sense impression exception and the excited utterance exception. Military Rule of Evidence 803(1) defines the present sense impression exception as a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Military Rule of Evidence 803(2) defines the excited utterance exception as a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Though the exceptions are distinct, both are rooted in the notion that such statements are inherently reliable because the declarant lacks the opportunity to fabricate in such circumstances. *See United States v. Jones*, 30 M.J. 127, 129 (C.M.A. 1990); *United States v. Brown*, 48 M.J. 578, 582 (A. Ct. Crim. App. 1998) (quoting Stephen A. Saltzburg, et al., Military Rules of Evidence Manual 942 (4th ed. 1997)).

Appellant claims that both exceptions applied to the excluded statement about which lane SSgt SD was in just before the collision because Appellant made the statement immediately after the collision and while under the stress of having killed SSgt SD. Appellant asserts that he "described or explained the event of his vehicle and SSgt [SD] colliding immediately after the event, i.e., after they ran to the ditch and saw SSgt [SD]'s body lying there." Appellant's assertion is not supported by the record. With respect to the timing of the excluded statement, A1C JB testified that Appellant made the statement sometime after Appellant and A1C JB were out of the vehicle, but "[i]t wasn't immediately after." In sustaining the objection, the military judge noted that the statement was made "[a]t some unknown time." With respect to the manner in which Appellant made the excluded statement, A1C JB testified that Appellant made the statement during a "general like overview of what went down." Appellant points to his attempts to get his

friends to take responsibility for the collision as evidence that he was under the stress of the collision. Though stress may have contributed to his actions, Appellant's plea of guilty to obstruction of justice also demonstrates that Appellant was taking advantage of his opportunity to fabricate before law enforcement officials arrived.

In the end, it is Appellant's burden as the proponent of the evidence to establish the basis for its admissibility. *Palmer*, 55 M.J. at 208 (citing *United States v. Shover*, 45 M.J. 119, 122 (C.A.A.F. 1996)). Appellant failed to meet his burden both at trial and on appeal.

We find that the military judge did not abuse his discretion in excluding Appellant's statement.

## B. Legal and Factual Sufficiency of Negligent Homicide Conviction

Appellant next asserts that the evidence was legally and factually insufficient to prove beyond a reasonable doubt: (1) that Appellant was negligent and (2) that Appellant's actions were prejudicial to good order and discipline and service discrediting. We disagree.

We review issues of both legal and factual sufficiency de novo, but the test for each is distinct. The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The test for factual sufficiency 'is whether, after weighing the evidence and making allowances for not having personally observed the witnesses, [we ourselves are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *Turner*, 25 M.J. at 325). In this unique appellate role, we apply neither the presumption of innocence nor guilt, but rather make our own "independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

We apply these tests to the issues raised by Appellant in turn.

### 1. Negligence

In order to prove that Appellant committed negligent homicide, the Government was required to prove, *inter alia*, that Appellant's actions that caused SSgt SD's death amounted to simple negligence.

> Simple negligence is the absence of due care, that is, an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care of the safety of others

which a reasonably careful person would have exercised under the same or similar circumstances.

*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), pt. IV, ¶ 85c(2).

Appellant argues that the "vastly different" conclusions reached by the government and defense experts regarding whether Appellant was in his designated lane at the point of impact rendered the evidence insufficient to prove that Appellant's conduct amounted to simple negligence. But we need not resolve the dispute over whether Appellant was in the wrong lane. The Government introduced several other facts to prove that Appellant failed to exhibit due care. We highlight two such facts in our analysis.

First, Appellant was traveling too fast. Though there was much debate about the speed at which Appellant was traveling, the slowest speed—proffered by the Defense accident reconstruction expert—was still approximately 40 miles per hour, nearly 9 miles over the posted speed limit.

Second, Appellant did not exercise due care in passing the SUV just before the blind curve. Appellant argues that "it would have been impossible for [him] to know that a bicyclist was riding near the [painted] median of the road on a curve with limited direct line of sight." But Appellant fails to acknowledge that the limitations imposed by the curve were precisely the reason why, in deciding to pass the SUV just before the curve, he exhibited a lack of due care. At trial, Appellant relied heavily on the fact that SrA DC, the driver of the other vehicle, was not punished for his similar driving maneuvers on 26 March 2016. Notably, when SrA DC was asked why he chose not to pass the SUV as Appellant had done, he responded, "The road was a bit narrow and it didn't seem like a good idea." Appellant, on the other hand, chose to pass a larger vehicle while approaching a blind curve on the K-25.

Under these circumstances, we find that Appellant failed to exhibit the "degree of care of the safety of others which a reasonably careful person would have exercised under the same or similar circumstances" and thus was negligent.

### 2. Terminal Element

In order to prove that Appellant committed negligent homicide, the Government was required to prove, *inter alia*, that Appellant's conduct was prej-

udicial to good order and discipline and of a nature to bring discredit upon the armed forces.[3]

"'Conduct prejudicial to good order and discipline' is conduct which causes a reasonably direct and obvious injury to good order and discipline." *Military Judges' Benchbook*, Dept. of the Army Pamphlet 27–9 at 857 (10 Sep. 2014). Acts that are prejudicial to good order and discipline must be directly prejudicial, not "prejudicial in a remote or indirect sense." 2016 *MCM*, pt. IV, ¶ 60c(2)(a). Here, a junior ranking Airman had a front row seat to Appellant's misconduct. Appellant was also aware that a separate car full of Airmen was following his lead to the restaurant. We are persuaded that Appellant's conduct in the presence of other servicemembers is a sufficiently direct and obvious injury to good order and discipline.

"'Service discrediting conduct' is conduct which tends to harm the reputation of the service or lower it in public esteem." *Benchbook*, at 857. "Whether conduct is of a 'nature' to bring discredit upon the armed forces is a question that depends on the facts and circumstances of the conduct, which includes facts regarding the setting as well as the extent to which Appellant's conduct is known to others." *United States v. Phillips*, 70 M.J. 161, 166 (C.A.A.F. 2011). Having previously discussed the Government's evidence at length, we hasten to our conclusion. The Government's evidence sufficiently established that Appellant's negligent conduct that occurred on a public road while he was assigned to an overseas duty location and that resulted in the death of a fellow Airman was of a nature to bring discredit upon the armed forces.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," the evidence is legally sufficient to support Appellant's conviction beyond a reasonable doubt. *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). After taking a fresh, impartial look at the evidence, making our own independent determination as to whether the evidence constitutes proof of the required elements of negligent homicide, and making allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

---

[3] On appeal, the Government asserts that it was only required to prove that Appellant's conduct was "to the prejudice of good order and discipline in the armed forces *or* was of a nature to bring discredit upon the armed forces." (Emphasis added.) In this case, the Government charged that Appellant's conduct was "to the prejudice of good order and discipline in the armed forces *and* of a nature to bring discredit upon the armed forces." (Emphasis added.) The Government was therefore required to prove both parts of the terminal element.

**C. Post-Trial Processing Delay**

It took 200 days from the day Appellant was sentenced for the convening authority to take action. Appellant asks this court to reduce his confinement to three years based on this presumptively unreasonable 80-day delay. We decline to do so.

Where the convening authority's action is not taken within 120 days of the end of trial, we apply the presumption of unreasonable post-trial delay established by the CAAF in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). We review de novo whether Appellant's due process rights were violated because of post-trial delay. *Id.* at 135 (citations omitted). In conducting our analysis, we consider the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) Appellant's assertion of the right to timely review and appeal; and (4) prejudice. "[These] four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Moreno,* 63 M.J. at 136 (citing *Barker*, 407 U.S. at 533; *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990)). We apply these factors in turn.

The first factor, the length of the delay, weighs in Appellant's favor because the Government exceeded the *Moreno* standard for a presumptively unreasonable delay by 80 days.

The second factor, the reasons for the delay, weighs slightly in Appellant's favor. Though the Government points to unanticipated issues in transcribing Appellant's trial, including the court reporter's workload, the reasons for the delay cannot be attributed to Appellant.

The third factor, whether Appellant exercised his right to speedy post-trial processing, weighs slightly in favor of Appellant. Though the record is void of any particular demand for speedy post-trial processing, Appellant previously requested relief for the violation of his right to speedy post-trial processing, albeit 190 days after the conclusion of his trial.

As to the final factor, prejudice, *Moreno* sets forth three types of prejudice arising from post-trial processing delays. 63 M.J. at 138–39. The first, oppressive incarceration, does not apply to Appellant because he does not prevail in his substantive appeal. *Id*. at 139. The second, anxiety and concern, is likewise inapplicable to Appellant. Appellant's assertion that the post-trial delay "put off timely resolution of the issues raised by Appellant" does not rise to the level of "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id*. at 140. The third and final factor, impairment of the appellant's ability to present a defense at a rehearing, is mooted by Appellant's failure to

prevail in his substantive appeal. *Id.* Prejudice, then, weighs in the Government's favor.

Where, as here, there is no discernible prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Considering the relevant factors together, we conclude that the 200 days that elapsed between the conclusion of trial and the convening authority's action are not so egregious as to impugn the fairness and integrity of the military justice system.

Appellant also asks us to consider whether *Tardif* relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. 57 M.J. at 225. In *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we set forth the following factors to determine whether *Tardif* relief was warranted:

> 1. How long did the delay exceed the standards set forth in *Moreno*?
>
> 2. What reasons, if any, has the government set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?
>
> 3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?
>
> 4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?
>
> 5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?
>
> 6. Given the passage of time, can this court provide meaningful relief in this particular situation?

*Gay,* 74 M.J. at 744.

Appellant does not point to any factor in particular but cites our sister court's opinion in *United States v. Collazo*, 53 M.J. 721, 725 (A. Ct. Crim. App. 2000), to emphasize that "[a] timely, complete, and accurate record of trial is a critical part of the court-martial process." In *Collazo*, the Army court granted four months of confinement relief to remedy a variety of post-trial processing errors, including the Government's failure to provide the appellant

11

with a copy of the record prior to authentication as required by Rule for Court-Martial (R.C.M.) 1103, its failure to provide a complete copy of the record of trial for use in preparing R.C.M. 1105 matters, as well as the 10-month delay in preparing the 519-page record of trial. Here, Appellant points only to the less than 3-month delay in preparing the 1,504-page record of trial and asks for a one-year reduction in his sentence.

After considering the factors enumerated in *Gay*, we conclude that relief is not warranted. On the whole, the processing of Appellant's case has not been subjected to excessive post-trial delay, and we perceive no substantial harm to Appellant, prejudice to the interests of justice or discipline, or erosion of this court's ability to conduct our review or grant appropriate relief that would move us to modify an otherwise fitting sentence.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c) (2016). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court